## RAILROAD COMPANY *v.* KOONTZ.

## RAILROAD COMPANY *v.* FUNKHOUSER.

1. A., a corporation of Maryland, having assumed the right to take, and B., a corporation of Virginia, the right to grant, a lease of the railroad and franchises of the latter in Virginia, A., with the implied assent of both States, took possession, and is in the actual use of the road and franchises. *Held;* that A. did not thereby forfeit or surrender its right to remove into the Circuit Court a suit instituted against it in a court of Virginia by a citizen of that State.

2. When the petitioner presents to the State court a sufficient case for removal it is the duty of that court to proceed no further in the suit. The jurisdiction of the Circuit Court then attaches, and is not lost by his failure to enter the record and docket the cause on the first day of the next term. Upon good cause being shown, the entry at a subsequent day may be permitted.

3. Good cause for such entry is presented where the petition for removal having been overruled by the State court, and the petitioner there forced to trial upon the merits, he, in the regular course of procedure, obtains a reversal of the judgment and an order for the allowance of the removal.

4. Where the removal is denied, the petitioner loses no right by contesting in the State court the suit on its merits.

ERROR to the Supreme Court of Appeals of the State of Virginia.

These cases are substantially alike, and present the following facts : —

The Baltimore and Ohio Railroad Company was incorporated by the State of Maryland on the 28th of February, 1827, to build and operate a railroad from Baltimore, in Maryland, to some suitable point on the Ohio River. By the terms of the charter the annual elections of directors were to be held in Baltimore. On the 2d of March following, the State of Virginia granted the company the same rights and privileges in Virginia that had been granted to it in Maryland, except that no lateral road could be built in Virginia without the consent of the legislature, and the road was not to strike the Ohio at a point lower than the mouth of the Little Kanawha. Under this authority from the two States a road was built from Baltimore to Wheeling, in Virginia. When the State of West Virginia was formed, it took from Virginia all the territory occupied by the road in that State, and from that time no part of the original line has been within the present State of Virginia.

On the 20th of August, 1873, under a lease from the Washington City, Virginia Midland, and Great Southern Railroad Company, a Virginia corporation, of all its railroad lying between Strasburg and Harrisonburg, in Virginia, the Baltimore and Ohio company took the exclusive possession of and operated the leased property, using for that purpose the powers and franchises of the Virginia corporation. While so operating the leased road an accident happened to one of the passenger trains, which resulted in the death of several persons, whose administrators, the defendants in error, each of whom was a citizen of Virginia, thereupon brought in a State court of that State, under her statute, these suits to recover of the company damages for such death.

On the 2d of September, 1876, which is conceded to have been in time, the company filed its petitions in the State court for the removal of the cases to the proper Circuit Court of the United States, on the ground that the company was a citizen of Maryland and the several plaintiffs citizens of Virginia.

The plaintiffs answered the petition in each case, denying that the company was a citizen of Maryland, and claiming that for all the purposes of these suits it was a citizen of Virginia. After hearing, the court refused to recognize the removal, because, as was held, by leasing and operating the road of the Virginia corporation under the Virginia charter, the company became, for all the purposes of that business, a citizen of Virginia. To this ruling exceptions were taken in due form and made part of the several records.

It nowhere appears that copies of the records of the State court were ever entered in the Circuit Court; but on the 19th of December, 1876, the company asked and obtained from the State court leave to plead, and in due time thereafter pleas of not guilty were put in. One case was tried in the State court on the 6th of April, 1877, another on the 10th of April, 1878, and the other on the 9th of December afterwards. Judgment was given in each case for the plaintiff. The company was represented at the trials, and exceptions of various kinds were taken. The causes were all carried to the Supreme Court of Appeals of the State, where the judgments were affirmed. The record in each case shows distinctly that errors were assigned on the ruling upon the petition for removal, and that the decision was adverse to the company. The cases are now here on writs of error.

*Mr. Hugh W. Sheffey* and *Mr. E. J. D. Cross* for the plaintiffs in error.

For the purpose of suing and being sued, a corporation is a citizen of the State which created it, and it has no legal existence beyond her bounds. The presumption of law is that its members are all citizens of that State, and a suit by or against it is conclusively presumed to be by or against such citizens. No averment or evidence to the contrary is, therefore, admissible in order to defeat the jurisdiction of a court of the United States. It follows that a suit by or against the Baltimore and Ohio Railroad Company must, so far as the question of jurisdiction is involved, be considered as a suit by or against citizens of the State of Maryland. *The Louisville, Cincinnati, & Charleston Railroad Co.* v. *Letson*, 2 How. 497; *Marshall* v. *Baltimore & Ohio Railroad Co.*, 16 id. 314; *Ohio*

*& Mississippi Railroad Co.* v. *Wheeler,* 1 Black, 286; *Railroad Company* v. *Harris,* 12 Wall. 65; *Railway Company* v. *Whitton,* 13 id. 270. That company, by leasing and operating the road of a company incorporated by Virginia, did not become a citizen of that State. *Baltimore & Ohio Railroad Co.* v. *Cary,* 28 Ohio St. 208. Its right of removing a suit brought against it cannot be defeated by State enactments nor waived by implication, nor was it in this instance forfeited by the imputed laches of the company in regard to the filing in the Circuit Court of copies of the record. The laches of which the defendants in error complain are the result of their efforts to defeat the acceptance by the State court of the petitions for removal. . Their position is, therefore, inconsistent with their own acts.

A party entitled to removal who, notwithstanding his protests and exceptions, is held for the trial of his case in the State court loses none of his rights by his defence upon the merits. *Gordon* v. *Longest,* 16 Pet. 97; *Kanouse* v. *Martin,* 15 How. 198; *Insurance Company* v. *Dunn,* 19 Wall. 214; *Removal Cases,* 100 U. S. 457; *Railroad Company* v. *Mississippi,* 102 id. 135; *Kern* v. *Huidekoper,* 103 id. 485.

*Mr. John Randolph Tucker* and *Mr. Moses Walton, contra.*

The prayer for the removal of these actions was properly denied. The plaintiff in error, by leasing and operating the road and exercising the franchises of a Virginia corporation, became a corporation of that State so far as the duties and responsibilities of the lessor and its liability to suit are concerned. *Baltimore & Ohio Railroad Co.* v. *Gallahue's Adm'rs,* 12 Gratt. (Va.) 655.

The doctrine of license and comity places a foreign corporation enjoying the license in a particular State upon substantially the same ground as if it were actually and originally created by such State, and determines its citizenship in respect to its right of removal of a suit pending against it. *Lafayette Insurance Co.* v. *French,* 18 How. 404; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *State* v. *Northern Central Railway Co.,* 18 Md. 193; *Sprague* v. *Hartford, &c. Railroad Co.,* 5 R. I. 233; *Pomeroy* v. *New York & New Haven Railroad Co.,* 4 Blatchf. 120; *Continental Insurance Co.* v. *Kasey,* 27 Gratt. (Va.) 216.

The right to remove these cases, if it ever existed, was lost by the failure of the company to file in the Circuit Court, on the " first day of its then next session," a copy of the records. *Cobb* v. *Globe Mutual Insurance Co.*, 3 Hughes, 452; *Removal Cases*, 100 U. S. 457; *Kern* v. *Huidekoper*, 103 id. 485; Dillon, Removal of Causes, pp. 102–105.

MR. CHIEF JUSTICE WAITE, after stating the facts, delivered the opinion of the court.

The questions presented for our consideration are: 1. Whether a case for removal was made by the company; and, 2. if it was, whether, as it does not appear affirmatively that copies of the records have been entered in the Circuit Court, the company has lost its right to have the judgments reversed for the original errors in that behalf.

The Court of Appeals in Virginia held, as early as 1855, in *Baltimore & Ohio Railroad Co.* v. *Gallahue's Adm'rs* (12 Gratt. (Va.) 655), that the Baltimore and Ohio company could be sued in Virginia, and in the course of the opinion said that the effect of the Enabling Act of Virginia was to make the company a Virginia corporation as to its road within the territory of Virginia. Afterwards, in 1870, this court decided, in *Railroad Company* v. *Harris* (12 Wall. 65), that the company could be sued in the District of Columbia, into which a lateral road had been built with the consent of Congress, given through an enabling act much like that of Virginia. In that case we held the company to be a Maryland corporation only, and that no new corporation had been created by the Enabling Act either of Virginia or the District of Columbia. The ruling in the Virginia case was followed by the Supreme Court of Appeals of West Virginia in *Goshorn* v. *Supervisors* (1 W. Va. 308) and *Baltimore & Ohio Railroad Co.* v. *Supervisors* (3 id. 319), both of which cases were decided before *Railroad Company* v. *Harris*, in this court. That question is, however, unimportant here, as it is conceded that the part of the road originally in Virginia is now in West Virginia, and that the company no longer uses in Virginia any of the franchises conferred by the Enabling Act of that State. Neither the Court of Appeals nor counsel here make any claim on account of that legislation.

Even conceding that the company was once a Virginia corporation, so far as its original road in that State was concerned, the most that can be said of it now is, that, in common with all citizens of the old State residing on the ceded territory, its citizenship was transferred by the organization of West Virginia from the old State to the new. Consequently, if it was once a corporation of Maryland and Virginia, it is now a corporation of Maryland and West Virginia. Any citizenship it may have had in Virginia has been lost.

It is not contended that this Enabling Act gave the company a right to lease another Virginia road and operate it as a lateral road, nor that in running the leased road the company uses any of the franchises conferred by the original grant. The present claim is that, by using the franchises of another Virginia corporation to run its leased road, it made itself a corporation of Virginia for all the purposes of that business, just as the lessor was and is.

It is well settled that a corporation of one State doing business in another is suable where its business is done, if the laws make provision to that effect. We have so held many times. *Lafayette Insurance Co.* v. *French,* 18 How. 404; *Railroad Company* v. *Harris, supra; Ex parte Schollenberger,* 96 U. S. 369. This company concedes that it was properly sued in Virginia. What it asks is, that, being sued there, it may avail itself of the privilege it has under an act of Congress, as a corporation of Maryland, and remove into the proper court of the United States exercising jurisdiction within Virginia a suit which has been instituted against it by a citizen of the latter State. The litigation is not to be taken out of Virginia, but only from one court to another within that State. So that the single question presented is, whether, by taking a lease of the road of a Virginia corporation, the Maryland corporation made itself also a corporation of Virginia, for all purposes connected with the use of the leased property.

It is not denied that the Maryland company derived all its power, so far as the operation of the Virginia road was concerned, from the Virginia corporation; nor that, in respect of the business of that road, it must do just what was required of the Virginia corporation by the laws of Virginia; but that

does not, in our opinion, make it a corporation of Virginia. It may be sued in Virginia, because with the implied assent of that State it does business there ; but, as we said substantially in Schollenberger's case, the question of suability and jurisdiction is not so much one of citizenship as of *finding*. If a citizen of one State is *found*, for the purposes of the lawful service of judicial process, in another, he may ordinarily be sued there. A citizen of Maine may be sued in California, if he happens to be there in person, and the proper officer serves him personally with the lawful process of a California court. He is still a citizen of Maine, although, in the exercise of one of the privileges of a citizen of the United States, he has been found in California. An individual may, without asking permission of State authorities, do business where he pleases, and, if a citizen of one State, he is entitled to all the privileges and immunities of citizens of the several States. Const., art. 4, sect. 2. Not so with corporations. Their rights outside the State, under the authority of which they were created, depend primarily on their charters. If the charter allows it, they may exercise their chartered privileges and carry on their chartered business in any other State which, by express grant or by implication, permits them to do so. They have no absolute right of recognition in any other State than their own. *Paul* v. *Virginia*, 8 Wall. 168. And the State which recognizes them can impose such conditions on its recognition as it chooses, not inconsistent with the Constitution and laws of the United States. If they are recognized and permitted to do business without limitation, express or implied, they carry with them wherever they go all their chartered rights, and may claim all their chartered privileges which can be used away from their legal home. Their charters are the law of their existence, and are taken wherever they go. By doing business away from their legal residence they do not change their citizenship, but simply extend the field of their operations. They reside at home, but do business abroad.

In this case, a Maryland corporation leased the railroad and the franchises of a Virginia corporation. Neither State legislature acted specially on the subject, so far as the record discloses. The Maryland corporation assumed the right to take,

and the Virginia corporation to grant, the lease which lies at the foundation of the rights of the parties. Under this lease possession was given and taken without objection from the authorities of either State, and the Maryland corporation actually uses the franchises of that of Virginia. The question, therefore, presented to us is not one of *ultra vires*. No complaint is made that Maryland has never given its corporation the right to go to Virginia and take a lease, nor that Virginia has never authorized its corporation to grant such a lease. For all the purposes of these cases, we must assume that the Maryland corporation is rightfully using the leased road, and with the consent of both States.

We can hardly believe if an individual, a citizen of a State other than Virginia, went into that State and leased the property of a Virginia corporation, to use as the corporation did, it would be claimed that he made himself thereby a citizen of Virginia, within the meaning of the Constitution and laws of the United States. Citizenship in this connection has a special signification. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the State wherein they reside. Amend. 14, sect. 1. A corporation may for the purposes of suit be said to be born where by law it is created and organized, and to reside where, by or under the authority of its charter, its principal office is. A corporation, therefore, created by and organized under the laws of a particular State, and having its principal office there, is, under the Constitution and laws, for the purpose of suing and being sued, a citizen of that State, possessing all the rights and having all the powers its charter confers. It cannot migrate nor change its residence without the consent, express or implied, of its State; but it may transact business wherever its charter allows, unless prohibited by local laws. Such has been for a long time the settled doctrine of this court. " It must dwell in the place of its creation, and cannot migrate to another sovereignty;" "but its residence in one State creates no insuperable objection to its contracting in another." *Bank of Augusta* v. *Earle*, 13 Pet. 519, 520. With a long line of authorities in this court to the same effect before us, we cannot hesitate to say, with all

due respect for the Court of Appeals of Virginia, that the Maryland corporation, by taking from the Virginia corporation, with the unconditional assent of Virginia, a lease of a railroad which could only be operated by the use in Virginia of the corporate franchises of the lessor, did not make itself a corporation of Virginia, or part with any of the rights it had under the Constitution and laws of the United States as a corporation of Maryland. The State of Virginia has not granted to it any special powers or privileges, beyond allowing it to transact its corporate business in Virginia. Its powers within the State come from its Maryland charter and the Virginia corporation. That corporation had certain franchises and privileges which it held by grant from its State. These franchises and privileges were a species of property which, we must presume for all the purposes of this case, it had the right to allow the corporation of another State to use. The Virginia authorities have impliedly assented to all that has been done. This assent having been given and the contract entered into between the companies, all Virginia can now require is that the Maryland company, in carrying on its business under the contract and using the franchises of the Virginia company, shall be subject to all obligations which the charter imposes on that corporation. The Maryland corporation simply occupies the position of a company carrying on an authorized business away from its home, with the consent of its own State and of that of the State in which its business is done. For these reasons we must hold that the Court of Appeals erred in deciding that the removal of the suit to the Circuit Court was properly refused, because the company, by taking the lease and using the road in Virginia, became, for all the purposes of that lease, a corporation of Virginia.

The only remaining question is whether the company can now claim a reversal of the judgments below on account of this error, since it does not appear that copies of the records in the State court have been entered in the Circuit Court. The State court of original jurisdiction directly decided, in accordance with the claims of the several defendants in error, that upon the showing made the company was not entitled to a removal, but must remain and defend the suits in that court.

It was conceded on the argument that if the judgment had been rendered before the first day of the next term of the Circuit Court of the United States, there could be a reversal if the case was in fact removable. The position of the defendants in error seems to be, that as the company appeared and went on with the causes in the State court after the next term in the Circuit Court, without showing that the copies of the records had been entered in that court, it in effect waived its right to a removal and submitted itself again voluntarily to the jurisdiction of the State court.

We have uniformly held that if a State court wrongfully refuses to give up its jurisdiction on a petition for removal, and forces a party to trial, he loses none of his rights by remaining and contesting the case on its merits. *Insurance Company* v. *Dunn*, 19 Wall. 214; *Removal Cases*, 100 U. S. 457; *Railroad Company* v. *Mississippi*, 102 id. 135. It is also a well-settled rule of decision in this court, that, when a sufficient case for removal is made in the State court, the rightful jurisdiction of that court comes to an end, and no further proceedings can properly be had there, unless in some form its jurisdiction is restored. *Gordon* v. *Longest*, 16 Pet. 97; *Kanouse* v. *Martin*, 15 How. 198; *Insurance Company* v. *Dunn*, supra; *Railroad Company* v. *Mississippi*, supra. The entering of the copy of the record in the Circuit Court is necessary to enable that court to proceed, but its jurisdiction attaches when, under the law, it becomes the duty of the State court to "proceed no further." The provision of the act of 1875 is in this respect substantially the same as that of the twelfth section of the Judiciary Act of 1789, and requires the State court, when the petition and a sufficient bond are presented, to proceed no further with the suit; and the Circuit Court, when the record is entered there, to deal with the cause as if it had been originally commenced in that court. The jurisdiction is changed when the removal is demanded in proper form and a c. .e for removal made. Proceedings in the Circuit Court may begin when the copy is entered. Such is clearly the effect of the cases of *Gordon* v. *Longest* and *Kanouse* v. *Martin*, where it does not appear that the record was ever entered in the Circuit Court. In *Insurance Com-*

*pany* v. *Dunn* and *Railroad Company* v. *Mississippi,* the records were entered, but no point was made of this in the opinions. We are aware that in *Removal Cases* (*supra*) and *Kern* v. *Huidekoper* (103 U. S. 485) it is said, in substance, that after the petition for removal and the entering of the record the jurisdiction of the Circuit Court is complete; but this evidently refers to the right of the Circuit Court to proceed with the cause. The entering of the record is necessary for that, but not for the transfer of jurisdiction. The State court must stop when the petition and security are presented, and the Circuit Court go on when the record is entered there, which is in effect docketing the cause. The question then is, whether, if the State court refuses to let go its jurisdiction and forces the petitioning party to trial, he must, in order to prevent his appearance from operating as a waiver, show to the State court that he is not in default in respect to entering the record and docketing the cause in the Circuit Court on the first day of the next term following the removal.

As has just been seen, when the State court has once lost its jurisdiction it is prohibited from proceeding until in some way jurisdiction has been restored. The right to remove is derived from a law of the United States, and whether a case is made for removal is a Federal question. If, after a case has been made, the State court forces the petitioning party to trial and judgment, and the highest court of the State sustains the judgment, he is entitled to his writ of error to this court. if he saves the question on the record. If a reversal is had here on account of that error, the case is sent back to the State court, with instructions to recognize the removal, and proceed no further. Such was, in effect, the order in *Gordon* v. *Longest, supra.* The petitioning party has the right to remain in the State court under protest, and rely on this form of remedy if he chooses, or he may enter the record in the Circuit Court and require the adverse party to litigate with him there, even while the State court is going on. This was actually done in *Removal Cases.* When the suit is docketed in the Circuit Court, the adverse party may move to remand. If his motion is decided against him, he may save his point on

the record, and after final judgment bring the case here for review, if the amount involved is sufficient for our jurisdiction. If, in such a case, we think his motion should have been granted, we reverse the judgment of the Circuit Court, and direct that the suit be sent back to the State court to be proceeded with there as if no removal had been had. . If the motion to remand is decided by the Circuit Court against the petitioning party, he can at once bring the case here by writ of error or appeal for a review of that decision, without regard to the amount in controversy.  *Babbitt* v. *Clark*, 103 U. S. 606. If, in such a case, we reverse the order of the Circuit Court to remand, our instructions to that court are, as in *Relfe* v. *Rundle* (id. 222), to proceed according to law, as with a pending suit within its jurisdiction by removal.  Should the petitioning party neglect to enter the record and docket the cause in the Circuit Court in time, we see no reason why his adversary may not go into the Circuit Court and have the cause remanded on that account.  This being done, and no writ of error or appeal to this court taken, the jurisdiction of the State court is restored, and it may rightfully proceed as though no removal had ever been attempted.

It is contended, however, that if the petitioner fails to enter the record and docket the cause in the Circuit Court on the first day of the next term, the jurisdiction of that court is lost, and there can be no entry on a subsequent day.  Such we do not understand to be the law.  The petitioner must give security that he will enter the record on that day, but there is nothing in the act of Congress which prohibits the court from allowing it to be entered on a subsequent day, if good cause is shown.  In *Removal Cases (supra)* we used this language: "While the act of Congress requires security that the transcript shall be filed on the first day of the next term, it nowhere appears that the Circuit Court is to be deprived of its jurisdiction if, by accident, the party is delayed until a later day in the term.  If the Circuit Court, for good cause shown, accepts the transfer after the day and during the term, its jurisdiction will, as a general rule, be complete and the removal properly effected."  This was as far as it was necessary to go in that case, and in entering, as we did then, on the

construction of the act of 1875, it was deemed advisable to confine our decision to the facts we had then before us. Now the question arises whether, if the petitioning party is kept by his adversary, and against his will, in the State court, and forced to a trial there on the merits, he may, after having obtained in the regular course of procedure a reversal of the judgment and an order for the allowance of the removal, enter the cause in the Circuit Court, notwithstanding the term of that court has gone by during which, under other circumstances, the record should have been entered. We have no hesitation in saying that in our opinion he can. As has been already seen, the jurisdiction was changed from one court to the other when the case for removal was actually made in the State court. The entering of the record in the Circuit Court after that was mere procedure, and in its nature not unlike the pleadings which follow service of process, the filing of which is ordinarily regulated by statute or rules of practice. The failure to file pleadings in time does not deprive the court of the jurisdiction it got though the service of process, but inexcusable delay may be good ground for dismissing the cause for want of prosecution. So here, if the petitioning party, without sufficient cause, fails to enter the record and docket the cause, the suit may be properly remanded for want of due prosecution under the removal ; but if sufficient cause is shown for the delay, there is nothing in the statute to prevent the court from taking the case after the first day of the term and exercising its jurisdiction. Clearly it is within the judicial discretion of every court, on good cause shown, to set aside a default in filing pleadings on a statutory rule-day, and allow the omission to be supplied. This case seems to be analogous to that. Undoubtedly promptness should be insisted on by the courts of the United States, and no excuse should be accepted for delay in entering a record after removal, unless it amounts to a clear justification or a waiver by the opposite party. It seems to us manifest that if the petitioning party is forced by his adversary to remain in the State court until he can, in a proper way, secure a reversal of the order which keeps him there, the requirement of the law for entering the record in the Circuit Court at any time before the reversal

actually takes place must be deemed to have been waived, and that for all the purposes of procedure in that court the time. when the State court lets go its jurisdiction may be taken as the time according to which the docketing of the cause is to take place. Certainly the petitioning party ought not to be required to carry on his litigation in two courts at the same time. He may do so if he chooses; but if he elects to go on in the State court after his petition for removal is disregarded, and take his chances of obtaining a reversal of any judgment that may be obtained against him because he was wrongfully kept there, he ought not to be deprived of a trial in the proper jurisdiction because of the unwarranted act of his adversary, or of the State court.

The judgment of the Court of Appeals in each of these cases will be reversed, and the causes remanded to the Supreme Court of Appeals of Virginia with directions to reverse the judgments of the Circuit Court of the county, and transmit the cases to that court with instructions to vacate all orders and judgments made or entered subsequently to the filing of the several petitions for removal and approval of the bonds, and proceed no further therein unless its jurisdiction be restored by the action of the Circuit Court of the United States or this court.

*So ordered.*