HAMILTON et ux. v. FOWLER et al.

(Circuit Court, W. D. Tennessee. August 25, 1897.)

1. REMOVAL OF CAUSES—JURISDICTION OF FEDERAL COURT—PROCEEDINGS BEFORE NEXT TERM.

After the filing in the state court of a proper petition and bond for removal, and before the first day of the next term of the federal court, the latter court has plenary jurisdiction over the case, and may do with it anything that it could do with a case originally brought therein; but in the doing of those things, it is governed by the rules of practice and procedure applicable to the case in hand. And, as the removal acts have prescribed the next term as the earliest day when the parties are required to appear in the federal court, they cannot be compelled until that time to appear and proceed in the ordinary way to final judgment, or to the hearing of any application requiring a determination of the whole merits of the controversy. But, on due notice, if any extraordinary procedure be necessary to preserve the property in litigation, or the rights of the litigants, either party may be required to appear for that purpose, and either may file the record for a proper hearing of the application.

2. SAME—ORDER STAYING FORECLOSURE SALE—MOTION TO DISSOLVE.

Where, in a suit to enjoin a sale of property under a mortgage, the state court, according to the state statutes and practice, has granted a temporary stay of the sale, and defendant then removes the cause, the federal court cannot hear a motion to dissolve the stay, before the first day of its ensuing term.

3. SAME—APPLICATION FOR INJUNCTION—ABANDONMENT.

On the filing of a suit in a Tennessee court, to enjoin a sale under a mortgage, the chancellor, pursuant to the state statute (Mill. & V. Code, §§ 5181, 5182), granted an order staying the sale until a day stated, and until the application for injunction should be disposed of. Defendant then removed the case to a federal court. *Held* that, by so doing, he voluntarily incurred the postponement of the hearing on the injunction until the ensuing term of the federal court, according to the procedure under the removal acts; and that the plaintiffs did not abandon their application for an injunction by not appearing to prosecute it in the federal court on the day fixed by the state court.

Motion to Dissolve Injunction.

This bill was filed on the 28th of June, 1897, in the chancery court of Shelby county, Tenn. It prays for an injunction against the sale of real estate mortgaged by the plaintiffs to secure a loan of $10,000 by the Jarvis-Conklin Mortgage Trust Company of Missouri, upon the ground that the contract was invalid, because of the failure of the Jarvis-Conklin Mortgage Trust Company to comply with the statutes of Tennessee requiring all foreign corporations to file their charters and abstracts of them with the secretary of state and in the registers' offices of the several counties, and prohibiting them from doing business in Tennessee until a compliance with that statute; also, because the contract was usurious, oppressive, and unconscionable, in requiring the plaintiffs to pay unreasonable lawyer's fees in case of a foreclosure.

Upon the filing of the bill, and according to the practice of the state chancery court, on the fiat of the chancellor the following stay order was issued, and served upon the defendants: "We therefore command you that you, and every of you, do stay the sale of the following described property, to wit [description of the property], until July 19, 1897, and until any application made for an injunction on the bill filed herein, under proper notice, shall be disposed of, and until further order of our court to the contrary. And this you shall

in no wise omit, under penalty prescribed by law." This order being duly served upon process of publication had, the defendants, on the 14th of July, 1897, appeared, filed their petition for a removal to this court, alleging that two of them were citizens of the state of New York, and the other a citizen of Ohio, and having tendered a sufficient bond as required by the statute, on the 15th day of July the chancellor granted the order removing the case to this court. The first day of the then next session of the circuit court of the United States for the Western division of the Western district of Tennessee to which the case was removed will be the fourth Monday in November next. On the 26th of July, 1897, the defendants, having entered a transcript of the record of the state court, without any leave of the court previously obtained, filed their several answers to the bill as they appear of record, and also a motion to dissolve or dismiss the "stay order" granted by the state court, upon the grounds: First, that there is no equity on the face of the complainants' bill to support the injunction; second, because the statements in the bill upon which the supposed equity rests are fully met and wholly overcome by the positive denials of the answers; and, third, because complainants have shown a want of diligence in the prosecution of their suit for an injunction, in this: that they have abandoned their application for an injunction. Upon due notice to the plaintiffs, this motion has been argued and submitted.

The act of the Tennessee legislature of 1873 (chapter 10) enacts as follows: "No judge or chancellor shall grant an injunction to stay the sale of real estate conveyed by deed of trust or mortgage, with a power of sale executed to secure the payment of loaned money, unless complainant gives twenty days notice to the trustee or mortgagee of the time when, place where, and of the judge or chancellor before whom said application for injunction is to be made, and no judge or chancellor shall act upon the said application unless the same is accompanied by proof, evidenced by return of a sheriff, constable or attorney, that said notice has been served on the said trustee or mortgagee, or he is not to be found in the county of his usual place of residence, or is a non-resident." "In order that the complainant may have time to give the required notice, the sale of the property so conveyed shall be advertised at least thirty days, and the sale shall be postponed until the judge or chancellor acts upon the application for injunction and makes his orders in the matter." Mill. & V. Code Tenn. §§ 5181, 5182.

Wolsen & Fitzhugh, for plaintiffs.

Bell & Horn, for defendants.

HAMMOND, J. (after stating the facts). The objection by the plaintiffs to the hearing of this motion is that it is premature, it being contended that the court has no jurisdiction or at least no power to dispose of this matter until after the first day of the next term of the court, on the fourth Monday in November next.. They contend that this is a statutory regulation in the practice of removed cases, which cannot be changed by any action of the court before that time. The question thus presented has never been passed upon by the supreme court of the United States nor the circuit court of appeals, so far as we are advised, and the authorities are confusing and conflicting.

The removal act of March 3, 1887 (24 Stat. 552), as amended by the act of August 13, 1888 (25 Stat. 433; 1 Supp. Rev. St. pp. 611, 613), by section 3 provides that the condition of the removal bond shall be that the removing party shall enter in the circuit court a copy of the record in such suit "on the first day of its then next session"; also for the payment of costs; and also "for their appearing and entering special bail in such suit if special bail was originally requisite therein." The removal act of 1875 (18 Stat. 470; 1 Supp. Rev. St. p. 83), of which the later act is an amendment, contained this provision:

"Sec. 7. That in all causes removable under this act, if the term of the circuit court to which the same is removable, then next to be holden, shall commence within twenty days after filing the petition and bond in the state court for its removal, then he or they who apply to remove the same shall have twenty days from such application to file said copy of record in said circuit court and enter appearance therein. * * *"

The old removal acts, prior to 1875, as codified by the Revised Statutes, at section 639, provided that:

"Any suit commenced in any state court * * * may be removed, for trial, into the circuit court, for the district where such suit is pending, next to be held after the filing of the petition for such removal hereinafter mentioned, in the cases and in the manner stated in this section. * * *" Rev. St. 639.

Also, by the same section, it is provided that the removing party should give a bond "for entering in such circuit court, on the first day of its session, copies," etc., and for their appearing and entering special bail in the case if special bail was originally requisite therein.

The latest act, of 1888, also provides, by section 3 (1 Supp. Rev. St. p. 613), as follows:

"And the said copy being entered as aforesaid in the said circuit court of the United States, the cause shall then proceed in the same manner as if it had been originally commenced in said circuit court."

With only changes of phraseology, this last provision was also contained in the prior removal act (Rev. St. § 633, last clause).

These statutes would appear on their face to be mere practice regulations, intended to secure the prompt removal of the case to the federal court, and the appearance of the removing party in that court. When originally this particular phraseology was adopted, in 1789, and for a long time after, the federal courts, having but little business, would meet only at stated terms, as prescribed by law, and no doubt this language was originally employed with reference to the fact that the earliest time at which the court would be open after the removal would be the first day of the next session or term. It was not then contemplated that in a hundred years the growth of the business of the courts would be such that they are substantially like courts of equity,—always open, and judges in ready attendance to hear causes at adjourned sessions of the courts, almost wholly without reference to the technical terms of the court, which regulate only the issuing of process, appearance thereto, pleadings, and such like matters of practice. Confusion arose, however, by an inclination on the part of some of the courts, or at least some of the judges, to treat this provision of the statute as jurisdictional, and not as a mere matter of procedure; and applying the well-known rule of judgment that such statutes must be strictly construed, and pampering somewhat the always sensitive prejudice against the exercise of this jurisdiction, they held that, unless the record was duly filed, the jurisdiction was gone, as it could be acquired only by exact compliance with the regulations of the statute; other courts and judges holding to the view that it was a mere matter of procedure, and, like other practice regulations, open to enlargement by the indulgence of the court in its sound discretion. This delusive contention still influences the argument of the question whenever it occurs, and the assertion is continually made, as in this case, that the court can have no jurisdiction of

the case until the return day of the removal petition.   As remarked
by Judge Dyer in McGregor v. McGillis, 30 Fed. 388–390, "it is now
idle to discuss that question, as it is settled by the decision of the
supreme court in Railroad Co. v. McLean, 108 U. S. 212, 2 Sup. Ct.
498." By that and numerous other cases it is settled that a failure
to file the record as required by the statute is not fatal to the juris-
diction, and the time may be enlarged by the court according to the
circumstances of the case, in its sound discretion.   Railroad Co. v.
Koontz, 104 U. S. 5, 16;  Removal Cases, 100 U. S. 457;  Railroad Co.
v. Mississippi, 102 U. S. 135;  Duncan v. Gegan, 101 U. S. 812;  Wool-
ridge ·v. McKenna, 8 Fed. 650;  Hall v. Brooks, 14 Fed. 113;  Mc-
Lean v. Railroad Co., 16 Blatchf. 309, Fed. Cas. No. 8,892;  Stouten-
burgh v. Wharton, 18 Fed. 1.

But these decisions of the supreme court that the statute in·respect
of this filing the record was only directory, and not mandatory,—only
a regulation of procedure, and not an imperative element of jurisdic-
tion,—did not remove the confusion relating to the subject, because
it is yet undetermined by the supreme court to what extent the juris-
diction of the federal court attaches during the time between the fil-
ing of the removal petition and bond in the state court, and the com-
ing around of the first day of the next term of the federal court.   Some
of the courts, indulging the widest latitude, hold that the removing
party may file the record at any time before the day fixed by the ,re-
moval act, though it is generally said that previous leave of the fed-
eral court must be had for the filing, or that the adversary party, by
like leave, may also file the record at any time before the first day
of the next term of the federal court, and that thereupon, when the
record is filed by either party, the court acquires the fullest power
to proceed with the case, and may do anything that could be done in
any other case pending in the court, except, perhaps, enter a final
decree;  for it seems that this class of decisions does stop short of do-
ing that, in deference to the statute, but otherwise that the court has
the liberty of full action, and, in some of the circuits or districts, rules
have been adopted to regulate the practice on this view.   Other
courts, however, within narrower limits, maintain that until the com-
ing of the first day of the next term of the federal court, which is fixed
by the statute as the time for the completion of the act of removal,
the court has only the power to do what inexorable necessity requires
shall be done to protect the thing in litigation and the rights of the
parties against irremediable mischief, and that it will not do anything
else except to preserve the property and the status quo until the com-
ing of the first day of the next term of the court at which the record
is due under the statute.   Not one of the courts, so far as I am advised,
now adheres to the rule that no jurisdiction to do anything can be
acquired until the coming of that day;  but, between the two lines
of judgment indicated, there has been considerable oscillation of de-
cision.   All agree everywhere that the jurisdiction of the state court
immediately ceases upon the filing of the petition and bond for re-
moval if the case be a removable one, and that eo instanti the juris-
diction of the federal court attaches.   This must be so;  otherwise,
the case would be outlawed, and, thus outstanding, there would be

no power anywhere to protect the parties and the property by the ordinary processes of procedure until the occurrence of the next term of the federal court to which the case was removed.

In Railroad Co. v. Koontz, supra, it was said by the court:

"The entering of the copy of the record in the circuit court is necessary to enable that court to proceed, but its jurisdiction attaches when, under the law, it becomes the duty of the state court to proceed no further." Page 14. Again: "As has been already seen. the jurisdiction has changed from one court to the other when the case for removal was actually made in the state court. The entering of the record in the circuit court after that was mere procedure, and in its nature not unlike the pleadings which follow the service of process, the filing of which is ordinarily regulated by statute or rules of practice." Page 17.

In Kern v. Huidekoper, 103 U. S. 485, 490, it is said that the filing of the transcript of record within the time prescribed by the statute invests the circuit court of the United States with full and complete jurisdiction of the case. That was, however, only incidental phraseology, used in an opinion sustaining the position that, after the removal of a suit, the state court loses its jurisdiction, and all that it does if the case be removable after that time is utterly null and void, and the question of the condition of the case meantime was not involved.

In Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. 58, where the question relating to the moment of time when the state court loses its jurisdiction, and the federal court acquires it, was somewhat more directly involved, it is said:

"Upon the filing, therefore, of the petition and bond (the suit being removable under the statute), the jurisdiction of the state court absolutely ceased, and that of the circuit court of the United States immediately attached."

And further on this language is used:

"The jurisdiction of the latter court attached, in advance of the filing of the transcript, from the moment it became the duty of the state court to accept the bond, and proceed no further."

—Which language is afterwards reiterated in Railroad Co. v. McLean, 108 U. S. 212, 216, 2 Sup. Ct. 498.

In the case of Railroad Co. v. Dunn, 122 U. S. 513, 7 Sup. Ct. 1262. the then chief justice, adverting to the want of a clear and distinct utterance on the part of the supreme court in relation to the power of a state court over a case after the petition and bond for removal had been filed. upon the authority of Railroad Co. v. Koontz, supra, and other cases, holds that, after the petition and bond for removal have been filed in a removable case, the jurisdiction of the state court ceases eo instanti.

Hence I think it must be taken as settled authoritatively that the jurisdiction of the federal court attaches immediately upon the filing of the bond and petition in the state court, and does not await the filing of the transcript by either party in the federal court. Of course, no court can proceed with any jurisdiction that it may have, limited or unlimited, until it has possession of the record of the case; and whatever jurisdiction the federal court has over the case prior to the filing of the record under the statutory regulation cannot, in the nature of the thing, be exercised without some kind

of inspection of the record; and I take it that, for the practical purposes of exercising any authority that it may properly exercise over the case, it may inspect the record, however and whenever presented by the parties interested, upon due notice of the proceeding, and this for whatever purpose such inspection may be required in the exercise of its jurisdiction. It is my own judgment that, technically, the most plenary jurisdiction that it is possible for any court to have attaches in the federal court at the very moment that the jurisdiction of the state court is ousted by the filing of the petition and removal bond, and ever thereafter the case is in the federal court subject to whatever power it may have in the premises.

Using the analogy suggested by the court in the quotation made from Railroad Co. v. Koontz, supra, this jurisdiction seems to me altogether like the jurisdiction a court has when, in a case originally commenced, process has been served requiring a party to appear at a future day, to wit, the first day of the next term of the court, or some other day to which the writ is returnable. In such a condition the court has absolute jurisdiction of the subject-matter of the suit, and control of the parties, and may, upon proper notice, do anything that is required in the case that may be done prior to the time when the statutory or other law regulating the practice requires the defendant to appear and plead or answer to the action which the plaintiff has brought. It has as much jurisdiction in the interim between the commencement of the action by service of process and the coming in of the defendant as it ever has, but it does not follow from this that it may at any and all times do any and all things that may be done in the progress of the case at some time, until the end. There must be regular steps of procedure and practice, and, although having the most plenary jurisdiction of the case, it has not the authority to do anything until the time comes in the regular order of procedure to do that thing. Because a court has jurisdiction of the parties and of the case, it does not follow that it would be proper to do anything which, according to the rules of practice and procedure, cannot be done at that particular time. These rules of practice and procedure, if regulated by statute, are imperative, and control the power of the court, for statutory rules of procedure and practice cannot be changed by precedent of decision or by rule of court, but the statute must govern in all cases. As here, when the statute says that the parties shall have until the first day of the next term of the court to file their record, it means that they shall have that time, and, when the statute says that "the cause shall then proceed in the same manner as if it had been originally commenced in the said circuit court," it means that it shall not thus proceed before that time, and anything that has not already been done in the case cannot be done until that time, in the normal and orderly course of procedure; but if any extraordinary steps are necessary for the preservation of the thing within the jurisdiction, or the protection of the rights of the parties to the thing within the jurisdiction, or to the use of the thing within the jurisdiction, the court may deal with these extraordinary conditions according to the circumstances of the case, and upon such due and regular notice as may be prescribed by

rules of practice or otherwise; but it is only as to these extraordinary and necessitous conditions that the power of the court can be invoked to proceed with the case before the time appointed by the statute for proceeding with it. This distinction is one of practical importance, because, under the statute, both parties understand that the first day of the next term of the federal court to which the case is removable is the day when they are expected to be in court to proceed with the case; and like a party served with a writ in an original case, returnable to a particular day, it is not to be expected that they will appear at any time prior thereto, in the ordinary course of practice, while, as to extraordinary emergencies, they may be expected and required to appear whenever rules of court or notices to that end are served upon them; and this is in full analogy to all other methods of practice generally known to our courts.

Keeping in mind, then, the proper distinctions between the jurisdiction over the case and the power and authority to proceed according to the law governing the practice of the court, whatever that be, there is no difficulty in maintaining at the same time the jurisdiction of the case and the rights of the parties as to the matter of procedure, and, along with both, of preserving the thing in controversy against any impairment or destruction by reason of any delay. If this delay be inconvenient to the party who has removed the case, and he should like to get along with it faster than the statute allows, it need only be said in reply to him that he has brought about the delay by his own conduct, in asking for a removal of the case to another court, where the procedure is arrested by his own act in the premises. If he could have got along more speedily in the state court, he should have stayed there, and he ought to have calculated upon the statutory delay when he filed his petition and bond for removal.

This was the view taken of the subject by our Brother Severens, of the Western district of Michigan, in the case of Torrent v. Lumber Co., 37 Fed. 727. In that case the defendant had removed, and, before the first day of the next term of the court, the plaintiffs appeared, and took leave to file a transcript of the record, gave notice to the defendant of the order allowing the transcript to be filed, and upon the next day took a default, for want of a plea. The default would have been proper in the state court, and was taken upon the theory that it was still the duty of the defendant to plead in the federal court without any suspension of that right by the act of removal. Upon an application to set aside this default, the learned judge granted it, and used this language:

"I do not agree to the proposition that there is an intermediate state in which a case is resting after the filing of the petition and bond in the state court, and before the day when the record must be filed in the federal court, and in which the jurisdiction of the latter court is inchoate, and can only be exercised piecemeal, as necessity requires. On the contrary, it appears to me that the correct view of the matter is to regard the jurisdiction over the case as being absolutely and completely required by the federal court upon the instant when the state court loses it, and that is upon the proper filing of the petition and bond in the latter court. And it seems to me that the concession that the court may exercise its authority over the case upon its own views as to the necessity

for it is tantamount to an admission that its jurisdiction is fully vested. But, in the exercise of its jurisdiction, the federal court is bound to follow the course of practice prescribed by law. If it fails to do this in dealing with the case, its authority is erroneously exercised. It is not therefore a question of jurisdiction, but of regularity only. This appears to me to be the view of the subject taken by the supreme court in Railroad Co. v. Koontz, 104 U. S. 5, where it is said in the opinion delivered by Chief Justice Waite, at page 15: 'We are aware that in the Removal Cases, 100 U. S. 475, and Kern v. Huidekoper, 103 U. S. 485, it is said, in substance, that, after the petition for removal and the entering of the record, the jurisdiction of the circuit court is complete; but this evidently refers to the right of the circuit court to proceed with the cause. The entering of the record is necessary for that, but not for the transfer of jurisdiction.' "

This also seems to me to be a full recognition by the supreme court of the distinction which is so forcibly put by Judge Severens in the language I have quoted.

Just what may be done, intermediately, between the filing of the petition and bond for removal in the state court and the filing of the transcript of record in the federal court, according to the statute, is a matter depending upon the circumstances of each case, and there is a contrariety of opinion about it. In the case of Judge v. Anderson, 19 Fed. 885, Judge Nelson, of the Minnesota District, says that, where the defendant had removed the case from the state court, the plaintiff might file the transcript in the then current term of the federal court, and that, "the jurisdiction then appearing of record, all proceedings necessary to prepare the case for trial at the next session of the court can be taken by either party. The court then has jurisdiction of the cause as if it had been commenced there by original process." He cites the case of Kern v. Huidekoper, 103 U. S. 487, for this position, and holds it to be an authority that the case can go on for the purpose of perfecting the issues, and of granting provisional remedies, but that the removing party is not required to try the issues until the term next ensuing after the time at which the removal was had. It is true that the procedure in Kern v. Huidekoper was as stated by Judge Nelson in this opinion, but the inference he draws from it was not directly ruled in judgment. The jurisdiction of the federal court was sustained, to be sure, and there is now no doubt about that; but, as far as I can see, there was no question made as to the regularity or irregularity of the proceedings in making up whatever issues were involved in that case; and Judge Severens, in the case already cited, calls attention to the inadvertence of the language used, in saying that the jurisdiction of the federal court was completed by the act of entering the transcript of record, as was acknowledged by the chief justice himself in the subsequent case of Railroad Co. v. Koontz, supra.

In the case we have in hand, the defendants have filed their answers, but as yet no objection has been taken to the regularity of that proceeding; and the point is not in judgment now, except so far as it is involved in the contention of the plaintiffs that nothing can be done in this case until the fourth Monday of November next, when the transcript is due under the statute. It is therefore not necessary to decide this point at the present time.

In Delbanco v. Singletary, 40 Fed. 177, Judge Sabin, of the dis-

trict of Nevada, takes the broad ground that, at any time after the petition for removal has been filed in the state court, either party may file the transcript of record in the federal court, and that the court will take jurisdiction of the case for all purposes. In that case he took jurisdiction for the purpose of remanding it. That was done, however, under a rule of the circuit court in that circuit which provides that either party may, at any time after the filing of the petition for removal, file the transcript required by law in the federal court, and serve written notice of such filing upon the adverse party or his attorney, and requires that, upon the filing in court of said evidence of service, the clerk shall enter the action upon his register, and that the same proceedings shall be thereafter had as if the transcript had been filed by the party removing the case at the time prescribed by law. It is said that this rule was the outgrowth of the case of Mining Co. v. Bennett, 4 Sawy. 289, Fed. Cas. No. 8,968, and was intended to cover all cases where long delay might occur by reason of the neglect of the removing party to file the record in the federal court. The power to make the rule is claimed under Rev. St. § 918, which gives the several circuit and district courts of the United States the power to prescribe rules of practice not inconsistent with any of the laws of the United States; and it is ruled that under the authority of Mining Co. v. Bennett, supra, this ruling is not inconsistent with the removal acts, because the statute contains no prohibition directly against filing it at any other time than that mentioned in the statute itself. Seemingly, this rule and this judgment establish a different rule of practice from that prescribed by the act of congress, but it was followed and approved by Judge Nelson of Minnesota in the Eighth circuit, in the case of Mills v. Newell, 41 Fed. 529, and the broad position is taken that, whenever the record is filed by either party, the court should not hesitate to look into it, and, if it finds that it has no jurisdiction, remand the case. This ruling, possibly, may also be justified as to the practice of remanding a case before the time fixed for the filing of the transcript, upon the statutory requirement that, whenever and however it shall appear to a federal court that it has no jurisdiction of a case, it will be dismissed or remanded. The cases of Delbanco v. Singietary and Mills v. Newell, supra, were also approved by Judge Sanborn, in the Minnesota district, in the case of Thompson v. Railway Co., 60 Fed. 773, and that case was remanded two months before the next session of the court, upon written notice of the motion.

In the case of Pelzer Manuf'g Co. v. St. Paul Fire & Marine Ins. Co., 40 Fed. 185, Judge Simonton, in the district of South Carolina, seems to adopt the rule that the removing defendant may file the transcript of record in the federal court before the next term thereof, and, upon proper notice, the parties will be required to proceed to make up their issues, and to hold that the effect of the filing of the petition for removal in the state court is to suspend the efflux of time in the matter of pleadings only until the transcript actually is filed in the federal court, and not until the time fixed by the statute for the filing of it.

In the case of Consolidated Traction Co. v. Guarantors' Liability & Indemnity Co. of Pennsylvania (in the district of New Jersey) 78 Fed. 657, Judge Kirkpatrick holds that, after the defendant has filed his petition for removal, the opposing party may file a transcript of the record in the federal court before the expiration of the time limited for the removing party to do so, and thereupon the removing party will be required to plead; and this is ruled upon the authority of Arthur v. Insurance Co., Fed. Cas. No. 565.

In Kansas City & T. Ry. Co. v. Interstate Lumber Co., 36 Fed. 9, Judge Phillips, of the Missouri district, had a case in which there was an application to condemn lands for railroad purposes. The defendant appeared, and filed a petition to remove. Before the record was due, at the next term of the federal court, the plaintiff appeared, filed a transcript of the record, and moved to remand the case, and, if the case should not be remanded, then to appoint commissioners, and proceed, according to the state statute, to a decree of condemnation. Both motions were refused, upon the ground that they could not be properly made until the regular time appointed by the statute for the filing of the transcript; and the intermediate authority of the court was confined to what he calls "provisional remedies," or orders designed to preserve the essential rights of the parties in preventing a failure of justice. He says it would be a forced construction to extend the rule justifying this intermediate procedure to the hearing of a motion to remand the case, or to proceed with it in its interlocutory stages to a final hearing before the "return day," and that, "if the case is remanded, that is a final determination of the case, and a final judgment, so far as the federal court is concerned. It is not reviewable on writ of error or appeal, and therefore it is a final disposition of the case." He observes that such a final judgment is not contemplated until after the time fixed by the removal acts has elapsed, when the party removing may file the record, which is the time given him for the preparation to hear such final questions; and, in conclusion, he says that he does not overlook the argument of the great inconvenience and injustice which operate, through delay, to the parties to the suit, but that with such imperfections of the law the courts have nothing to do.

In Re Barnesville & Morehead Ry. Co., 4 Fed. 10, which was also a condemnation case, in the district of Minnesota, the defendant filed a petition to remove, and immediately the plaintiff filed a transcript of the record in the federal court, two months before the next regular session of that court, and asked the court to proceed with the case by the appointment of commissioners and taking other necessary proceedings. Judge Nelson in that case held that the court could not proceed until the regular term came around. He put it upon the ground that the statute was jurisdictional, and the court would have no jurisdiction to proceed.

In the case of New Orleans City R. Co. v. Crescent City R. Co., 5 Fed. 160, in the district of Louisiana, Judge Billings refused to entertain an application to dissolve an injunction before the return day of the removed case, where a dissolution of the injunction would have

been a final determination of the whole merits of the case, and could not be granted without changing the status of the parties with reference to the thing to be finally adjudged. He approves a quotation from Judge Dillon in his treatise on the Removal of Causes, as follows:

"If the record be entered before that time, it has been made a question whether the jurisdiction will then attach. For some purposes it would seem that it might; as, for example, if it became necessary meanwhile to issue an injunction or appoint a receiver, which should be done, however, only upon notice, in order to protect the rights of the parties, or to preserve the property in litigation."

Judge Billings says that an analysis of the authorities shows that receivers may be appointed, property may be sold, and its proceeds placed in the registry of the court; an injunction may be granted, and, when a defendant is in possession of property, an injunction which prohibited him from using it during the pendency of the suit may be dissolved, upon such terms as would protect the adversary party, and allow the court to proceed with the consideration of the case upon its merits; but, where the sole question presented to the court is the possession of a franchise, the court could not proceed one step in the hearing of an application to dissolve the injunction without entering upon the consideration of the case as an entirety, and could not grant the dissolution of the injunction without completely changing the status of the parties. Indeed, after dissolving the injunction, nothing would be left for the court to do but to dismiss the bill, and in such a case he holds that the court has no jurisdiction to dissolve the injunction. More properly, perhaps, he might have held that, while the court had jurisdiction to dissolve the injunction, it ought not, under the circumstances, to dissolve it until the return day of the removed cause; that is to say, until the day appointed by the act of congress for the case to proceed to final judgment, in the regular order of its procedure.

Judge Deady, in the Oregon district, in the case of City of Portland v. Oregonian Ry. Co., 6 Fed. 321, reached the same conclusion, and in that case he entertained a motion to modify the injunction allowing a defendant who was restrained in the use of his property to continue in its use upon giving a bond to indemnify the plaintiff against any loss that might come to him by such intermediate use. This was clearly within the principle that the court must and should proceed to do whatever is necessary to protect the parties by interlocutory orders and decrees, or whatever is required to preserve the property itself or the status of the parties.

The case of Railroad Co. v. Rust, 17 Fed. 275, so confidently relied upon by defendants' counsel in this case, is precisely to the same effect, and in line with these last-named cases. In that case there was a bill filed by the plaintiffs to enjoin the defendants from removing their machinery, construction appliances, and general plant from a railroad bridge which they had engaged to construct. Their property was seized, and put in the hands of a receiver. They removed the case to the federal court, and immediately, without waiting for the return day of the next term, moved to dissolve the injunction, and vacate the order appointing the receiver. This was done

by Judge Caldwell, sitting in that case, in a somewhat indignant opinion, in which he held that it was a violation of the property rights of the defendants to take from them, on such flimsy claims as those presented by the bill, their property, without any hearing or trial, and he was right about it; and it is just this class of cases which the federal courts will unhesitatingly hear before the return day, in order that no irremediable mischief may be done to the citizen by depriving him of the rightful use of his property, pending the litigation. It was the preservation of the right of the defendant to the immediate use of his property that constituted the necessity and provisional character of that order, and the case is precisely analogous to that before Judge Deady, just cited, in which he required the giving of a bond, which, however, Judge Caldwell did not require. This case was in no sense a final determination of the rights of the parties, by dissolving the injunction.

We now come to the case of Mining Co. v. Bennett, 4 Sawy. 289, Fed. Cas. No. 8,968, which is so much relied upon for the doctrine of the cases in the Eighth and Ninth circuits, as justifying the most unrestricted and unlimited authority over the case before the return day; and the case seems to me to have been misapprehended in that regard. That opinion was intended to establish the now undisputed doctrine that it was competent for the court to receive the record before the return day, and to act upon it on the application of either party for such interlocutory proceedings as were necessary to preserve the property and the rights involved in the litigation from injury. Before the petition for removal was filed, an application had been made for a preliminary injunction in the state court. The defendant, upon removing the case, would have been at liberty to go on with his alleged wrongful conduct, and in the exercise of his alleged wrongful ownership of the mine in question; and what Judge Sawyer decided was that, between the filing of the petition for removal and the coming around of the first day of the next term of court, the case was not outlawed or so situated that neither court could have any power or authority over it to grant this relief, and he held that the authority to go on for that particular purpose was in the federal court, and that in that case he could hear the application for the injunction. He especially says, after deciding that the record may be filed before the return day for such purposes, that, "after the record has been filed in pursuance of such leave, the court has jurisdiction, in its discretion, to proceed and administer all provisional remedies applicable to the case. Any other construction would work intolerable inconvenience and remediless injury to the parties, and could not have been contemplated by congress." It is to be observed that he especially limits this judgment to "provisional" remedies to save otherwise remediless injuries, and the case, in my judgment, is not an authority for the doctrine that the court may go on and hear anything at will, and make any disposition of the case which it may choose, before the return day.

Other cases may be cited, along with those already mentioned, to show that this requirement of the statute for a fixed return day is not jurisdictional, but a matter of procedure, and that the procedure

is within the sound discretion of the court. But, of course, this sound discretion of the court means that it is to be governed by the positive requirements of acts of congress, the rules of court, and the practice precedents, as all discretion is, and it does not mean that the court may do anything it chooses, at will. Wilson v. Telegraph Co., 34 Fed. 561, by Mr. Justice Field, in the California district; Burgunder v. Browne, 59 Fed. 497, by Judge Gilbert, in the Washington district; Lucker v. Assurance Co., 66 Fed. 161, by Judge Simonton, in the South Carolina district; Pierce v. Corrigan, 77 Fed. 657, by Judge Acheson, in the Pennsylvania district. The cases of Perry v. Sharpe, 8 Fed. 24; Sharp v. Whiteside, 19 Fed. 151; Manufacturing Co. v. Smith, 1 Dill. 307, Fed. Cas. No. 5,217; Coburn v. Cattle Co., 25 Fed. 793; Bryant v. Thompson, 27 Fed. 882,—cited by counsel for the defendants, are, in my judgment, without any bearing on this question of practice.

It is a result of all the authorities—First. That the federal court, during the intermediate time between the filing of the petition for removal and the coming of the first day of the next session of the court, has the most plenary jurisdiction over the case, and may do with it anything that it could do with a case originally brought in the court, or that any court may do with any case of which it has acquired rightful jurisdiction; but, in the doing of those things, it must be governed, as in all cases, by the rules of practice and procedure applicable to that particular class of cases to which the one in hand belongs. Second. That, in the class of cases comprehending those removed from a state court, the acts of congress regulating the removal and the practice therein have prescribed the next term of the federal court as the earliest day when the parties to the suit are required to appear in the federal court, so that the case may proceed in the ordinary way to a final hearing in due course of proper practice and procedure, and until that time they are not required to appear and proceed; but, upon due notice for that purpose, if any extraordinary procedure be necessary to preserve the property in litigation or the rights of the litigants, either party may be required to appear for such extraordinary purpose, and either may bring along the record, and file it for a proper hearing of the application, whatever it be; and while the court has the jurisdiction, as it always has, to proceed even erroneously, it has no rightful authority to proceed erroneously, and it would be error, before the return day, to hear any application not falling within the limits above indicated.

The application made to the court in this case falls within the category of those which should not be granted until after the return day of the removal proceedings. It finds a complete precedent in the case from Louisiana by Judge Billings,—New Orleans City R. Co. v. Crescent City R. Co., 5 Fed. 160. In this case, as in that, the result of the application would be to finally determine the whole merits of the controversy. There would be nothing left but to dismiss the bill before the time when such dismissal would be proper. If the injunction resting upon the defendants should be dissolved, they or their trustee could proceed with the sale of the property, pocket the money, and any claim against it set up by this bill would not be at

all available by any final decree that the court could make. It is true that in the case of Cæsar v. Capell, 83 Fed. 403, involving one of these Jarvis-Conklin mortgages, we have just decided that the claim of invalidity, under the Tennessee statutes, involved, is not a sound one, and that a contract similar to the one pleaded in this case is not invalid, and may be enforced by the courts in Tennessee; and on that judgment, and so far as relates to that issue in this bill, we might not and would not, upon an application for an injunction, grant one; but the plaintiffs in this case, having obtained the injunction of the state court, are entitled to hold on to it for a final trial of that issue, as they make it in their own bill, until the motion to dissolve can be properly made, under the rules and practice of the court. Whatever delay is incident to this is the consequence of the defendants' own act in removing the case, and it does not lie in their mouths to complain about it.

In reaching this conclusion, I have paid no attention whatever to the answers of the defendants which have been filed before the return day of the removal case. Whether they have been properly filed under the rulings that have just been made, I am not now called upon to decide. If the application were a proper one to be made at this time, I do not doubt that defendants might have leave to file an answer, and that it would have all the force and effect of an answer on the hearing of such an application, just as they would have a right to use affidavits according to the practice of the court on such a preliminary and interlocutory hearing. But it occurs to me to say here, by way of illustration, that if the plaintiffs, being satisfied with these answers, should set this case for final hearing upon bill and answer, it could not now be heard under the rulings that have just been made, for the reason that the removing defendants would have a right, under the act of congress, to postpone the hearing of the case until after the first day of the next term of the court, to prepare for such a trial, just as the plaintiffs have the same time to prepare for such an application as that now made. This disposes of the first and second grounds stated in the motion to dissolve the injunction.

As to the third ground, that the plaintiffs have shown a want of diligence in the prosecution of their suit for an injunction, and that they have abandoned their application for an injunction, something further should be said. In the case of Plowman v. Saterwhite, 3 Tenn. Ch. 2, Chancellor Cooper has explained the reason and policy of the Tennessee statute (Mill. & V. Code Tenn. §§ 5181, 5182) under which this bill was filed, and the statutes upon their face show quite clearly what they mean. It is claimed by the defendants here that this is not, strictly speaking, an injunction, but only a statutory "stay order," and therefore does not fall within the rule of New Orleans City R. Co. v. Crescent City R. Co., 5 Fed. 160. The argument is that, under the statute, it was the duty of the plaintiffs to appear on the 19th of July, 1897, named in the order, and apply for their injunction in the state court; and, not having appeared there, it was their duty to come with the record here, and make that application to us; and, not having done so, that they have abandoned this claim for relief; and that either there is no longer any injunction, and

the stay order is not now operative, or else that it ought to be immediately discharged. It is also argued that the chancellor's stay order goes beyond the statute in allowing the stay to continue until the further order of the court to the contrary. The conclusive answer to this position is that on the 14th day of July, 1897, and before the time appointed by the chancellor's order for making the application for an injunction, the defendants, of their own accord, appeared in the state court, and arrested all further proceedings until the fourth Monday of next November, by filing their petition and bond for removal, thereby ousting the state court of all jurisdiction in the premises, and under a statute which on the face of it directed that the removing party should file the record at the next term of the federal court, then more than four months off, and that the case should only then proceed; and that, in the face of that statute, they have chosen to file their record before that time, upon the assumption that the case may proceed contrary to the plain words of the statute, for the purposes of dissolving the stay order, and of correcting whatever excess there may be in that process itself.

The jurisdiction of the federal court over the case before the return day cannot be denied, but it does not follow from this, and the undeniable fact that the federal court takes the case at the exact point where the state court left it, that the plaintiffs are compelled to appear to make in their own behalf such an application as the state statute contemplates, at any time before the time appointed by the act of congress, for hearing it when the case has been removed. It is then only that the federal court commences where the state court left off, except in those cases where provisional procedure is required. So far as relates to the point that the stay order no longer exists, by reason of the neglect of the plaintiffs to appear in this court, and ask for the injunction, which the state statute contemplates shall be asked for at the time of the expiration of the statutory stay order, it need only be said that, if that be true, there is no obstacle in the way of the trustee proceeding to sell the property; but he must take the responsibility of doing that thing in the present attitude of the case. He cannot call upon this court before the return day of the removal petition to relieve him of that responsibility, by formally discharging a stay order which already has no force and effect. If it has any binding force, the defendants must wait, under the ruling we have made, until the return day of the case, before it can be discharged. If it has no force and effect, the defendants must proceed at their own peril.

I am not prepared to say that the order of the chancellor is beyond the authority conferred upon him by the statute. In its very terms, the statute provides that "the sale shall be postponed until the judge or chancellor acts upon the application for injunction." and makes his orders in the matter. Mill. & V. Code Tenn. § 5182. The party applying for an injunction is required to give 20 days' notice of the time and place where the application will be made, and in the meantime the statute stays the sale; but surely there is no hard and fast rule that the application for injunction shall be absolutely made at the expiration of the 20 days, and that, if it be not then made, it shall

be treated as abandoned. Like all other statutes of that kind and all practice of that kind, it is subject to any contingencies that may arise; and, if it cannot be heard on the very day when the 20 days expire, it may be heard at such other day as the chancellor may appoint, according to the rules and practice of the court. And if any event happen to postpone the day, such as the death of the parties or the like, or the removal of the case to the federal court, let us say that postponement would not affect the force of the stay order; and the necessary result of the filing of this petition for removal simply is that the defendants, by their own application to remove the case, have called into effect an act of congress which postpones the requirement upon the plaintiffs that they shall apply for an injunction, until the first day of the next session of the court succeeding the filing of the application for removal, and until that time the parties must be content with the postponement granted by the act of congress. The application to vacate the stay order must be denied. Ordered accordingly.