JOHN G. SHIELDS, APPELLANT, *v.* ISAAC THOMAS, AND MARY, HIS WIFE, NANCY PIRTLE, JOHN B. GOLDSBURY, THOMAS STARKS, AND ELIZABETH, HIS WIFE, AND JAMES PICKETT, AND ANN, HIS WIFE.

Where there was an administration upon the estate of an intestate in Kentucky, the surety in the administration bond and a portion of the distributees residing there, the court of that place had jurisdiction over the subject-matter; and where the principal defendant, although residing out of the State, voluntarily appeared and answered a bill filed against him, the jurisdiction of the court was complete, and it had a right to pass a decree in the premises.

If several claimants of portions of an estate unite in filing a bill, this does not make it multifarious. The authorities upon this subject examined.

In this case, this court has already decided the point.  See 17 How. 4, 5.
The court in Kentucky having rendered a decree for the complainants, they had a
  right to file a bill in Iowa, to enforce this decree.

THIS was an appeal from the district court of the United
States, for the northern District of Iowa.

The case is stated in the opinion of the court.

It was argued by *Mr. Gillett*, for the appellant, and *Mr. Platt
Smith*, for appellees.

*Mr. Gillett* made nine points.   Those which are touched
upon in the opinion of the court were the following:—

2. The bill is multifarious, and therefore bad.   1 Dan. Ch.
Pr. 384;  Cooper's Eq. Pl. 182;  Mitford, 146–7;  8 Peters, 123.

7. A judgment against persons not within the jurisdiction of
the court, and who were not served with process, and who did
not appear to the action, is null and void.

If a court in one State can render effective judgments against
persons in other States, who are neither served with process nor
appear to the action, there will be no security for the citizen.
The mere shadow of claims might ripen into valid judgments,
without the defendant having an opportunity to defend.   No
authoritative court has ever held such judgments valid.   The
following cases are conclusive upon this point.   Ewer *v.* Coffin,
1 Cushing, 24;  Hickey *v.* Smith, 1 Eng. 456;  3 id. 318, 324;
Woodruff *v.* Taylor, 20 Vermont, 65;  Davis *v.* Smith, 5 Geo.
274;  Dunn *v.* Hall, 8 Blkf. 32, 335;  11 How. 165;  2 M'Lean,
473;  3 J. J. Marshall, 600;  2 B. Monroe, 453;  3 B. Monroe,
218;  6 J. J. Marshall, 578;  8 B. Monroe, 137.

8. A judgment or decree void as to one or more of the parties
is void as to all.   6 Pick. 232 ;  12 Johns. 434;  11 N. H. 299;
14 Ohio, 413.

Upon the principal points in the case, *Mr. Platt Smith* said:

We take the ground that the court in Kentucky had jurisdic-
tion of the subject-matter, and of John G. Shields, and that
consequently their decree cannot be inquired into, but full faith
and credit are to be given to it, as is provided by the constitu-
tion and act of congress of the United States.   Cons. U. S.
art. 4, § 1 ;  act con. 26th May, 1790 ;  1 U. S. Stat. at L., 122.
That as to James Shields and Henry Yater, who were non-
residents, and proceeded against as such, the Kentucky decree
would not be binding on them except in the State of Kentucky,
for the courts of that State did not obtain jurisdiction over their
persons.   Story's Confl. of Laws, § 569 ;  Williams *v.* Preston,
3 J. J. Marshall, 600 ;  Cobb *v.* Haynes, 8 B. Monroe, 139.   Still,
that could not affect the validity of the decree as to John G.
Shields, for the court had jurisdiction of his person and of the

subject-matter, namely, the settlement of the estate of John Goldsbury, deceased; consequently, their judgment or decree is not void, no matter whether it was right or wrong to join Henry Yater and James Shields in the rendition of the decree.

The present action is not multifarious. There is no mixture of different claims. Although the decree is virtually several, yet it is in fact only one thing, and grows out of one subject-matter; a trial of the question as to one complainant is a trial as to the whole.

The remedy at law is uncertain and would have caused a multiplicity of suits, for each complainant would, at law, have been obliged to bring a suit against John G. Shields; and to have sued at law would have raised the objection, first, that no action at law could be had on the decree of a court of equity; Hugh v. Higgs and wife, 8 Wheat. R. 697; Carpenter et al. v. Thornton, 3 B. & Al. 52; Elliott v. Ray, 2 Blackf. R. 31; and second, if the whole had been attempted in one suit, that there was no mutuality between the plaintiffs; Gould's Pl. 197; 2 Saund. R. 117, n. 2; and, third, if there had been several suits, then, that several distinct actions could not be brought on one decree.

The uncertainty, then, of an action or actions at law was sufficient ground for giving to a court of equity jurisdiction of the case; Story's Eq. Pl. § 473; and the avoidance of multiplicity of suits was another ground; 1 Story's Eq. Juris. § 64, k.; also 67; Jesus College v. Bloom, 3 Atk. 263.

Mr. Justice DANIEL delivered the opinion of the court.

Upon an appeal from a decree in chancery by the district court of the northern district of Iowa.

This case, although upon the record a good deal extended in volume, is in effect narrowed to the questions of law arising upon the pleadings.

The facts of the case, so far as a statement of these is necessary to an accurate comprehension of the legal questions discussed and decided, were as follows: In the year 1839, a portion of the appellees, as heirs and distributees of John Goldsbury, by their bill filed in the circuit court for Grayson county, in the State of Kentucky, alleged that their ancestor died in Nelson county, in the State aforesaid, intestate, leaving a widow, Eleanor Goldsbury, and four children—three daughters, Elizabeth, Nancy, and Mary, and one son, Bennett Goldsbury—all these children infants at the time of their father's death. That John Goldsbury died, possessed of one male and one female slave, and of other personal property, and perfectly free from debt. That the widow Eleanor Goldsbury, who was appointed

the administratrix of her husband, and as such took possession
of the estate within a year from the period of his death, inter-
married with one James Shields, in conjunction with whom
she had continued to hold the entire estate, and to apply it to
their exclusive use, without having made any settlement or dis-
tribution thereof.   The bill further charged, that Shields and
wife, after enjoying the services and hires of the male slave for
several years, had ultimately sold him, and that, in the year
1818, they removed from Kentucky to the State of Missouri,
carrying with them the female slave belonging to the estate of
John Goldsbury, together with her descendants, seven in num-
ber, and of great value; that upon application to said Shields
and wife, for a surrender of those slaves, and for an account of
the estate of John Goldsbury, so possessed and used by them,
this request was refused, and that, by a fraudulent confederacy
between Shields and wife, and John G. Shields, their son, and
Henry Yates, their son-in-law, the slaves had by the son and
son-in-law been secreted, carried off and sold, in parts unknown
to the complainants, and the other personal estate of John
Goldsbury fraudulently disposed of in like manner.   The bill
also made defendants the representatives of the surety of
Eleanor Goldsbury, in her bond given as administratrix of her
first husband.   The bill also made defendants though not in an
adversary interest, Isaac Thomas, and Mary, his wife, Elizabeth,
John and Ann Goldsbury, which said Elizabeth, John, and
Ann, are the infant children of Bennett Goldsbury, son of John
Goldsbury, deceased.

After the filing of the bill in this case, it appearing to the
satisfaction of the court that James Shields, and Eleanor, his
wife, Elizabeth, John, and Ann Goldsbury, John Shields, and
Henry Yates, were not inhabitants of the State of Kentucky,
there was, on the 25th of December, 1839, under the authority
of the statute of Kentucky with reference to absent defendants,
issued by the court what is termed a warning order, by which
the absent defendants were required to appear at the next April
term of the court, and answer the complainants' bill.

Afterwards, namely, on the 28th of April, 1840, the absent
defendants still not appearing, under the like authority of the
law of the State, the clerk of the court, by its order, filed on be-
half of those defendants a traverse denying the allegations of
the complainants' bill.

Subsequently to this proceeding, namely, on the 30th of Octo-
ber, 1841, the said John G. Shields filed his answer to the
complainants' bill, thereby recognizing as to himself personally
the jurisdiction of the court.

Upon these pleadings, the cause after an examination of wit-

nesses, and upon a report of the master, came to a hearing before the circuit court, and this tribunal decreed against the representative of the surety in the administration bond of Mrs. Goldsbury, (afterwards Mrs. Shields,) and against James Shields her husband, she having departed this life, John G. Shields, the son, and Henry Yates, the son-in-law, in favor of the heirs and distributees of John Goldsbury, the portions reported to be due to them respectively of the general effects of John Goldsbury, deceased, and of the values and hires of the slaves. Upon an appeal taken from this decree to the supreme court of Kentucky, it being the opinion of the latter that, under the circumstances, the surety in the administration bond should not be charged, and also that an amount equal to the price of the slave Mat, sold by the administratrix and her husband, and to the hires of the remaining slaves, had been properly applied to the dower of the widow and to the use of the heirs of John Goldsbury, it ordered the decree of the circuit court to be re-formed in conformity with the opinion of the supreme court. By a final decree of the circuit court of Grayson county, made on the 28th day of October, 1846, the bill as to the representative of the surety in the administration bond was dismissed, and the defendants, James Shields, John G. Shields, and Henry Yates, and each of them, who had, by fraudulent combination, secreted and carried off, and disposed of the descendants of the female slave, originally the property of John Goldsbury, were decreed and ordered to pay to the heirs of said John Goldsbury severally, the amounts ascertained to be due to them as their respective and separate portions of the value of the slaves thus fraudulently disposed of, without any allowance for the hires of those slaves.

To obtain the benefit of this last decree, the suit now before us was instituted in the names of the appellees, Isaac Thomas and Mary, his wife, Uriah Pirtle and Nancy, his wife, citizens of the State of Kentucky, and John B. Goldsbury, a citizen of the State of Missouri, the said Mary Thomas, and Nancy Pirtle, and John B. Goldsbury, being heirs and distributees of John Goldsbury, deceased, against John G. Shields, a citizen of the State of Iowa. The bill refers to the proceedings in the Kentucky suit, which proceedings are set forth *in extenso* as an exhibit in this cause; it further assigns as a reason for the non-joinder of a portion of the heirs of John Goldsbury as defendants, the fact that their residence precluded as to them the jurisdiction of the district court of Iowa. It sets out the sums of money severally and specifically decreed to the complainants by the circuit court of Grayson county, Kentucky, and prays that the defendant, John G. Shields, may be compelled to perform that decree by

22 *

the payment to the complainants respectively the sums so awarded them, and concludes with a prayer for general relief.

By an amendment to the original bill in this case, the several heirs and distributees of John Goldsbury, residing in the State of Missouri, beyond the jurisdiction of the district court of Iowa, and who, for that reason, were not made defendants by the original bill, were admitted as complainants in this suit, and united in the prayer for enforcing the decree in their favor, as rendered by the circuit court of Grayson county, Kentucky.

To the original and amended bills in this case, the defendant, John G. Shields, interposed a demurrer, which having been overruled, and the demurrant abiding by his demurrer, and declining to answer over, the district court for the district of Iowa, on the 17th day of January, 1854, adjudged and decreed to the complainants the sums respectively awarded to them by the circuit court of Grayson county, Kentucky, as against the defendant, John G. Shields, with interest upon those several sums from the 28th day of October, 1846, the date of the decree in the circuit court.

Upon an appeal from the district court of Iowa, several points arising upon the demurrer, and discussed and adjudged by that court, are presented for consideration here. Amongst the objections insisted upon, that which stands first in the natural order, is the alleged want of jurisdiction in the circuit court of Kentucky, either over the subject-matter or the parties embraced in the proceedings in that court.

In this objection no force is perceived. The subject-matter of the suit was the settlement of the estate of an intestate who lived and died within the limits of the court's authority, within which limits the qualification of the administratrix of the intestate, the appraisement of his estate, and the recording of that appraisement had taken place; within which also was the residence of the surety in the administration bond, and of a portion of the distributees—both plaintiffs and defendants asserting before that court their interest in the estate. The court, as one vested with general equity powers, could act either *in personam* or *in rem*, as to persons or property within the State.

Under the laws and the practice in the State of Kentucky, already referred to, proceedings are authorized and prescribed in suits in equity against absent defendants; which proceedings, when regularly observed, are held within the State to be binding absolutely. With respect to absent defendants, such proceedings could be considered as binding beyond the limits of the State in instances only in which those defendants should have been legally and personally served with process, or in which they

should have voluntarily submitted themselves as parties. In the suit in the state court, the subject-matter of the controversy, as well as a portion of the parties, both plaintiffs and defendants, being confessedly within its cognizance, no ground for exception to the jurisdiction could exist as to these. The defendant, John G. Shields, when he voluntarily entered his appearance, and answered the bill, placed himself in the same predicament with the other parties regularly before the court, and could not afterwards except to the jurisdiction upon the ground of his non-residence. The decree, therefore, so far as this exception is designed to affect it, cannot be impeached.

The objection which seems to follow next in order, is one levelled at the frame of the bill in the district court of the United States, irrespective of the justice or regularity of the proceedings in the state court. This objection is, that the bill filed in the district court of Iowa is multifarious, by embracing in one suit interests and causes of action in themselves separate and disconnected, and therefore such as it was improper to include in one bill.

There is, perhaps, no rule established for the conducting of equity pleadings, with reference to which (whilst as a rule it is universally admitted) there has existed less of certainty and uniformity in application, than has attended this relating to multifariousness. This effect, flowing, perhaps inevitably, from the variety of modes and degrees of right and interest entering into the transactions of life, seems to have led to a conclusion rendering the rule almost as much an exception as a rule, and that conclusion is, that each case must be determined by its peculiar features. Thus Daniel, in his work on Chancery Practice, vol. 1, p. 384, quoting from Lord Cottenham, says: " It is impossible, upon the authorities, to lay down any rule or abstract proposition, as to what constitutes multifariousness, which can be made universally applicable. The cases upon the subject are extremely various, and the court, in deciding upon them, seems to have considered what was convenient in particular cases, rather than to have attempted to lay down an absolute rule. The only way of reconciling the authorities upon the subject is, by adverting to the fact that, although the books speak generally of demurrers for multifariousness, yet in truth such demurrers may be divided into two distinct kinds. Frequently, the objection raised, though termed multifariousness, is in fact more properly misjoinder; that is to say, the cases or claims united in the bill are of so different a character that the court will not permit them to be litigated in one record. But what is more familiarly understood by the term multifariousness, as applied to a bill, is, where a party is able to say, he is brought as a de-

fendant upon a record, with a large portion of which, and of the case made by which, he has no connection whatever."

Justice Story, in his compilation upon equity pleading, defines multifariousness in a bill to mean, "the improperly joining in one bill distinct and independent matters, and thereby confounding them." And the example by which he illustrates his definition is thus given: "the uniting in one bill several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature, against several defendants in the same bill." Sir Thomas Plumer, V. C., in allowing a demurrer which had been interposed by one of several defendants to a bill on the ground that it was multifarious, remarks, that "the court is always averse to multiplicity of suits, but certainly a defendant has the right to insist that he is not bound to answer a bill containing several distinct and separate matters relating to individuals with whom he has no connection." Brooks *v.* Lord Whitworth, 1 Mad. Ch. R. 57.

Justice Story closes his review of the authorities upon this defect in a bill, with the following remark: "The conclusion to which a close survey of all the authorities will conduct us, seems to be, that there is not any positive inflexible rule as to what, in the sense of a court of equity, constitutes multifariousness, which is fatal to a suit on demurrer." To bring the present case to the standard of the principles above stated, the appellees are seeking a subject their title to which is common to them all, founded in the relation they bear to a common ancestor. The different portions or shares into which the subject may be divisible amongst themselves, can have no effect upon the nature or character of their title derived as above mentioned; and which in its character is an unit, and cannot be objected to for inconsistency or diversity of any kind. They seek an account and the recovery of a subject claimed by their common title, or an equivalent for that subject, against persons charged with having by fraudulent combination withheld and diverted that subject, and who, by such combination and diversion, rendered themselves equally, jointly, and severally liable therefor. Upon the face of this statement it would be consistent neither with justice nor convenience, nor consistent with the practice, to turn the appellees round to an action or actions at law, for any aliquot parts of each upon a division of this subject claimed under their common title, and which aliquot portions would have to be ascertained by an account which would not depend upon the question of liability of the defendants. The like principles and considerations would, in every case of equal responsibility in several persons, instead of condemning, commend, and in a court of equity would command, wherever practicable, a common proceeding against all to whom such responsibility extended.

But in truth, the question raised upon this point on the demurrer, seems to have been virtually, if not directly concluded by this court upon this very record. At the December term, 1854, of this court, a motion was made by a portion of the appellees to dismiss this appeal upon the following grounds : In the decree in favor of the distributees in Kentucky, the court having designated the shares of the whole amount recovered, which would belong to each distributee, and the district court of Iowa having adopted the same rate of distribution in enforcing the decree of the Kentucky court, by which rate it appeared that none of the distributable portions amounted to the sum of $2,000; those distributees, with the view, no doubt, of hastening the termination of this controversy, and of obtaining immediately the benefit of the decree in their favor, moved this court for a dismission of this cause, upon the ground that the sum in controversy between the appellant and the persons submitting that motion was less than $2,000, and, therefore, insufficient to give this court jurisdiction. The chief justice, in the opinion denying the motion to dismiss, uses this language : " The whole amount recovered against Shields in the proceeding in Iowa exceeds $2,000, but the sum allotted to each representative who joined in the bill was less; and the motion is made to dismiss, upon the ground that the sum due to each complainant is severally and specifically decreed to him; and that the amount thus decreed is the sum in controversy between each representative and the appellant, and not the whole amount for which he has been held liable. But the court think the matter in controversy in the Kentucky court was the sum due to the representatives of the deceased collectively, and not the particular sum to which each was entitled when the amount due was distributed among them according to the laws of the State. They all claimed under one and the same title. They had a common and undivided interest in the claim ; and it was perfectly immaterial to the appellant how it was divided among them. He had no controversy with either of them on this point, and if there was any difficulty as to the proportions in which they were to share, the dispute was among themselves, and not with him." *Vide* 17 How, pp. 4, 5. This reasoning appears to be conclusive against the defect of multifariousness imputed to the claim of the appellees in this case; and we deem it equally so with respect to defendants sustaining an equal responsibility deducible from one and the same source.

The remaining objection arising upon the demurrer, which we deem it necessary to consider, is that urged against the right of the appellees to institute proceedings in equity in the State of Iowa, to enforce the decree rendered in their favor by the court

in Kentucky. We can perceive no force in the effort to sustain this objection by citation of the 7th amendment of the Constitution of the United States, which provides, " that in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." This provision, correctly interpreted, cannot be made to embrace the established, exclusive jurisdiction of courts of equity, nor that which they have exercised as concurrent with courts of law; but should be understood as limited to rights and remedies peculiarly legal in their nature, and such as it was proper to assert in courts of law, and by the appropriate modes and proceedings of courts of law.

With respect to the character and effects of decrees in chancery, although they now rank in dignity upon an equality with judgments at law, it is well known that they were once regarded as not being matters of record; and that the final process incident to judgments at law was unknown to and not permitted in courts of equity; that where such process has been permitted to them, it has been the result of statutory enactments. But the extension to a court of equity of the power to avail itself of common-law process, cannot be regarded as implying any abridgment of the original constitutional powers or practice of the former; but as cumulative and ancillary, or as leaving those powers and that practice as they formerly existed, except as they should have been expressly restricted. Amongst the original and undoubted powers of a court of equity is that of entertaining a bill filed for enforcing and carrying into effect a decree of the same, or of a different court, as the exigencies of the case, or the interests of the parties may require. *Vide* Story's Equity Pleading, §§ 429, 430, 431, upon the authority of Mitford, Eq. Pl. 95, and of Cooper's Eq. Pl. 98, 99.

In the present case the appellees were, by the residence of the appellant in a different State, cut off from the benefit of final process upon the decree of the state court, which process would not run beyond the territorial jurisdiction of the State. They were left, therefore, to the alternative of instituting either an action or actions at law upon the decree in their favor, or of filing a bill for enforcing and carrying into effect that decree. Upon the former mode of proceeding, they would have been compelled to encounter circuity, and most probably the technical exceptions urged in argument here, founded upon the nature of the decree with respect to its unity or divisibility. The appellees have elected, as the remedy most beneficial for them, and as we think they had the right to do, the proceeding by bill in equity, to carry into execution the decree of the state court. We can perceive no just exception to the jurisdiction of the

district court of Iowa in entertaining the bill of the appellants,. nor to the measure of relief decreed, nor with respect to the party against whom that relief has been granted. We therefore order that the decree of the district court of Iowa be affirmed.