## HOME INS. CO. OF NEW YORK et al. v. VIRGINIA-CAROLINA CHEMICAL CO. et al.

### (Circuit Court, D. South Carolina. June 13, 1901.)

1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PARTIES--ANCILLARY SUITS.

A number of actions at law were brought in a state court by the same plaintiff against different insurance companies on policies covering the same property. All of such actions were removed into a circuit court of the United States, except one, in which the amount involved was less than $2,000. Thereafter certain of the defendants filed a bill in equity in said circuit court against all the other parties in the several actions, alleging that by the terms of each of the policies sued on the liability of the company issuing it was limited to the same proportion of the total loss which such policy bore to the total insurance, which it was stipulated should equal 90 per cent. of the value of the property insured, the insured to be regarded as insurer for any deficiency of insurance below such 90 per cent.; that the value of the property was in dispute in each of the several actions, and a single determination of such value, which would be binding on all the parties in interest, was essential to the protection of the rights of the several insurers, and to a determination of the amount of their several liability under such provision of their policies. The bill prayed that the further prosecution of all the actions at law be enjoined, and the liability of the respective insurers determined and adjusted by the court as a court of equity, under such bill. *Held*, that such suit was supplemental and ancillary to the actions at law, within the rule determining federal jurisdiction, and could be maintained, without regard to the citizenship or residence of the parties.[1]

2. INSURANCE—VALUED-POLICY LAW—SOUTH CAROLINA STATUTE.

The provision of Act S. C. Feb. 28, 1896 (22 St. at Large, 113, 114), that after the expiration of 60 days an insurer in a fire insurance policy shall be estopped to deny the truth of the statements in the application which was adopted, "except for fraud in making the application for insurance," does not preclude an insurer from contesting the valuation placed upon the property in the application and policy, where it is alleged that such valuation exceeded the true value of the property by more than 100 per cent., and that its adoption was secured by the fraudulent misrepresentation and concealment of the insured.

3. EQUITY JURISDICTION—GROUNDS—REFORMATION OF INSURANCE POLICY.

A bill filed by a number of insurance companies, each of which has issued a policy covering the same property, and each of which has been sued at law on such policy, which alleges facts showing that it is necessary to determine the value of the property insured in order to fix the amount of total liability and to apportion the same between the several insurers under the terms of their policies, and which also alleges that the property was greatly overvalued in the policies through the fraud of the insured, states a cause of action within the jurisdiction of equity for a uniform reformation of the policies as to the value stated therein and the adjustment of the loss between them, neither of which can be accomplished through the several actions at law.

4. FEDERAL COURTS—INJUNCTION—RESTRAINING ACTIONS IN STATE COURT.

The same plaintiff commenced a number of actions in a state court on insurance policies covering the same property, some of which actions were removed by the defendants into a circuit court of the United States. Two of such defendants filed an ancillary bill in that court, making the plaintiff and all other insurers of the property defendants, alleging that all the insurance contracts were, by their terms, interde-

---

[1] Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

pendent, and setting up certain equities necessary to be adjudicated before the liability of any one of the insurers under its policy could be determined. *Held*, that neither the fact that actions on some of the policies were pending in the state court nor that such court refused to surrender jurisdiction of those sought to be removed deprived the federal court of jurisdiction to enjoin the further prosecution by the insured of any of the actions in either court until a hearing on the bill. Such an injunction does not deny the jurisdiction of the state court, nor affect to interfere with it, but operates only on the plaintiff in the actions to prevent him from making an unfair use of the processes of courts of law to deprive the complainants of rights which, under the facts alleged in the bill, such courts cannot adequately protect.

5. EQUITY JURISDICTION—ENJOINING ACTIONS AT LAW—CONSTITUTIONAL RIGHT TO JURY TRIAL.

The constitutional provision securing the right of trial by jury in actions at law does not affect the power of a court of equity to draw to itself the trial of matters in issue in pending actions at law, where it is shown that there are other matters substantially affecting the rights of the parties in such actions which are cognizable only in equity.

6. EQUITY PLEADING—MULTIFARIOUSNESS.

The joinder in a bill of two or more complainants having separate interests does not render such bill multifarious where the relief sought by each involves the same questions, requires the same evidence, and leads to the same decree.

## In Equity. On demurrer to bill and plea.

This is a bill filed by the Home Insurance Company of New York and the German-American Insurance Company of New York against the Virginia-Carolina Chemical Company, the Hartford Fire Insurance Company, of Hartford, Conn., the National Fire Insurance Company, of Hartford, Conn., the Connecticut Insurance Company of Hartford, Conn., the Phœnix Assurance Company, of London, the Liverpool & London & Globe Insurance Company, the Scottish Union & National Insurance Company, the North British & Mercantile Insurance Company of Edinburgh, the Caledonia Insurance Company, of Scotland, the London Assurance Corporation, the Commercial Union Assurance Company, Limited, the Manchester Fire Insurance Company, the Lancashire Insurance Company, of Manchester, the Norwich Union Fire Insurance Society, and the Western Assurance Company, of Toronto, Canada. An action at law had been brought by the Virginia-Carolina Chemical Company against each one of these insurance companies complainants and defendants in this bill in the court of common pleas of Charleston county, S. C. They were removed into this court. A motion to remand was made in each case, and the motions were severally refused. These cases are now on file in this court for trial. Another suit was brought at law by the Virginia-Carolina Chemical Company against the London Assurance Corporation, in the court of common pleas aforesaid, for a sum less than $2,000, and said cause was not removed into this court. Under these circumstances this bill is filed. After setting forth the names of the several insurance companies complainants and defendants, and the jurisdictional facts as to amount and citizenship, the bill proceeds to state: That each of the insurance companies named above, in September or October, 1899, issued a policy of insurance, each policy, except in the name of the insurer, the date, and the amount of the risk, being in every respect identical. In each of said policies the company therein named as insurer agreed to insure W. G. Crenshaw, Jr., in the amount stated in the policy, with the statement in each policy that the loss, if any should occur thereunder, would be payable to said Crenshaw or to the Virginia-Carolina Chemical Company, as interest might appear; the insurance being effected upon the same property described in each policy, the same being all located in the state of South Carolina, and each policy having been executed at Greenville, South Carolina. That after the execution of

the said several policies, to wit, on 20th November, 1899, there was indorsed upon each policy a statement that the interest of W. G. Crenshaw, Jr., in the property covered by said policy of insurance had been conveyed to the Virginia-Carolina Chemical Company with the knowledge and assent of the insurer. That the values of the buildings described in said policies and insured therein are stated by the insured in each policy. That such values were received and written in said policies upon the statement and information of the Virginia-Carolina Chemical Company, upon which the insurance companies relied, and on which they were compelled to rely, wholly. That the contracts of insurance were entered into because of this reliance, and but for such reliance would not have been entered into; and this was well known to the Virginia-Carolina Chemical Company. That in June, 1900, a fire occurred, which partially destroyed the property insured. That proofs of loss were made, identical in every respect, to each of the insurance companies. That said proofs of loss are defective, in that they do not contain plans and specifications of any buildings, fixtures, and machinery destroyed or damaged, which the terms of the policies called for, and which, on demand by the said insurance companies, the Virginia-Carolina Chemical Company has failed and refused to furnish. That in October, 1900, separate suits were brought in the court of common pleas of Charleston county by the said Virginia-Carolina Chemical Company against such of said insurance companies on each policy, making claim in each suit for the amount claimed in the proofs of loss, as for a total loss. That all these suits have been removed into this court, except that against the London Assurance Corporation. That, notwithstanding this removal of said suits, the Virginia-Carolina Chemical Company is still prosecuting them in the state court, and maintains that the said state court has jurisdiction to control, hear, and try said causes, and dispose of all matters arising therein. That thus a conflict between the two courts will arise, and complainants will be harassed by a multiplicity of suits. The exact averments of the bill which follow will be set out, as they are to a crucial point: "Your orators show that by the terms of each of the insurance policies issued by your orators and the other insurers upon said property described in said Exhibit A it is provided that no company shall be liable under its policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount insured by such policy shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property. That it is further provided in each of said policies of insurance as a part of the consideration thereof, and the basis upon which the rate of premium was fixed, that the assured shall maintain insurance on each item of the property insured thereunder to the extent of ninety (90) per cent. of the cash value thereof; and that, failing so to do, the assured shall be an insurer to the extent of such deficit, and in that event shall bear his, her, or their proportion of any loss: provided, however, that whenever the loss does not exceed five (5) per cent. of the amount of insurance involved, the co-insurance clause need not apply in the adjustment. Your orators show, therefore: That, if they and the other insurance companies are liable at all to said Virginia-Carolina Chemical Company under said policies of insurance, —which, however, your orators, for the reasons hereafter more fully stated, do not admit, but deny,—that each is liable for a proportion only of said loss, to wit, as the amount of the policy of each insurer bears to the total insurance, including in such total insurance any amount for which the said Virginia-Carolina Chemical Company may be liable to each as a co-insurer in the event it should have failed to maintain insurance to the extent of ninety (90) per cent. of the value of the property insured. That, in order to do justice between said companies, and to carry out the provisions of said contract, it is necessary that the amount of loss, if any, should be ascertained. That the amount of insurance maintained should be ascertained. That the per cent. that such insurance bears to the value of the property insured should be ascertained and fixed, and that the amount, if any, that the insured is liable to contribute as a co-insurer should be ascertained and fixed; and that, if the court should hold that your orators and the other in-

surance companies are liable at all, that the loss should be apportioned between each of said insurers and the insured in accordance with the terms and stipulations of their contracts as hereinbefore set forth. That by virtue of said contracts of insurance each insurer is interested in the liability of the other, and in the liability of the assured as a co-insurer. That, if these several matters are to be ascertained in sixteen different suits at law by different juries, through different trials, in one case one set of values might be fixed, in another another set of values might be fixed, and in this way one insurance company might be called upon to pay its proportion in one case upon a different ratio than might be fixed in each of the other cases of the other insurers; so that instead of the insurers, if liable at all, paying in accordance with their covenants, they would pay in accordance with the discordant findings, of separate juries in separate trials, and perhaps in separate tribunals and jurisdictions. Your orators show that this presents a case for the ascertainment of whether any liability at all exists, and, if there be any, then for making a common apportionment and determining the contribution which each of the insurers, including the insured as a co-insurer (if it should be found to be liable as such), should bear the common loss; that this can only be done in a court of equity, where matters of account, apportionment, and contribution are cognizable; and that the several common-law actions against the several insurers should be enjoined, and the whole matter settled in one suit on the equity side of the court, where alone the matters involved are properly cognizable." That a large amount of the property affected by the fire, to wit, a quantity of lead, has been saved, and that for this the insurance companies are entitled to a proportionate credit on their policies. That the Virginia-Carolina Chemical Company claims that they are entitled as against the insurers to the total value of the property stated in the policies, to wit, $69,380, for the proportionate value of which sum each insurer is liable, the proportion being fixed by the ratio the sum insured bears to the whole value of the property. That this claim as to the value of all the property insured is based upon an act of assembly of the state of South Carolina approved February 28, 1896, entitled "An act to regulate the issue of policies by fire insurance companies." That this act is invalid, in that the title is not consistent with its contents. That the real value of the property covered by insurance was $31,000, and not $69,380, as expressed in the policies, and that this latter sum was put in the policies solely upon the information of the Virginia-Carolina Chemical Company, as the property insured was so situated and in such a condition that the insurers could not thoroughly examine it in its built and completed condition. That the Virginia-Carolina Chemical Company well knew this, and that the insurers were compelled to rely, and did in fact rely, only on its representations; and, notwithstanding this, it grossly overestimated the value of the property and included in the valuation loss of business, loss of profits, and other matters, not proper elements of value, and which are not required to be valued by the law of South Carolina. That this overvaluation exceeds the true value one hundred per cent., and that it is in fact a misrepresentation and concealment so gross as to operate as a fraud upon the insurers, and will either avoid the policies, or, at the least, avoid them to the extent of the overvaluation. That this is an ancillary suit to the suits at law, and that the jurisdiction of this court is not affected by the citizenship of the parties, or the amount in controversy.

The prayer of the bill (answer under oath being waived) is:

"(1) That the defendant the Virginia-Carolina Chemical Company be enjoined from prosecuting any further the suits originally brought in the state court, or from undertaking to enforce their rights in any court, except in this court in this case. (2) That they be enjoined from prosecuting the suits at law removed into this court. (3) That the Virginia-Carolina Chemical Company is bound to furnish each insurer with verified plans and specifications of the buildings destroyed by fire, and such plans and specifications should have been furnished within 60 days from the happening of the fire, and more than 60 days before commencement of suit; and, having failed so to furnish them, it is not entitled to recover on any policy. (4) That

the act of assembly of the state of South Carolina, so far as it provides that in case of total loss by fire the insured shall be entitled to recover the full amount of insurance, and a proportionate amount in case of partial loss, is unconstitutional and void. (5) That, if your orators and the insurance companies defendants hereto, or any of them, shall be held to be liable in any amount to said Virginia-Carolina Chemical Company, that the liability be decreed to be one calling for a contribution and apportionment on the part of each company so liable in the proportion that the insurance which it may have upon the property insured bears to the total insurance upon such property, whether valid or not, including the sum, if any, for which such assured may be, under the terms of its contract of insurance, liable as a co-insurer, and that an accounting be had to ascertain what the actual cash value of the property destroyed or damaged by fire may be, and the amount, if any, for which your orators and said other insurance companies may be liable to said Virginia-Carolina Chemical Company, together with the amount of salvage, if any, which should be credited upon said loss; and also that an accounting be had of the amount of insurance upon said property, including any amount for which said Virginia-Carolina Chemical Company may be a co-insurer. (6) That the values stated by the Virginia-Carolina Chemical Company in the said several policies of insurance issued to it as aforesaid be decreed to have been fixed by the said Virginia-Carolina Chemical Company, and not to have been fixed by your orators and said other insurance companies, but to have been accepted by them relying upon the said Virginia-Carolina Chemical Company. That it be decreed that your orators and said other insurance companies had a right to rely upon and accept the said values so fixed by said Virginia-Carolina Chemical Company as true. That it be decreed that the same are not the values of said property so insured, but that the same are so grossly excessive as to amount in law to a misrepresentation and concealment of the true values of said property, which render the same not binding upon your orators and said other insurance companies. That by reason of such misrepresentation and concealment the minds of your orators and said other insurance companies have never met with the said Virginia-Carolina Chemical Company upon a contract of insurance, and that the said policies be set aside, and decreed to be null and void, because of said misrepresentation and concealment of the true values of said property. That if the court shall decree that said entire policies are not rendered invalid by such misrepresentation and concealment, that it will decree that so much of said contracts of insurance as fix said values be declared invalid, and be set aside, because of such misrepresentation and concealment. (7) For a reference to a master to take the account and ascertain how the sums be distributed."

In the exhibit attached to each of the policies, and referred to in the bill, is a statement of the values of the buildings described in each of the policies, and stated by the insured to be, and the insured and the insurer thereby fix the amounts of the insurance to be carried thereon, respectively as follows: In this statement the buildings said to have been destroyed by fire, to wit, Nos. 9 and 10 and 13, are thus described: "Value of buildings 9 and 10, $69,380. Value of building 13, $250. Nos. 9 and 10 are insured at $69.380. No. 13 is insured at $250. To comply with act of the general assembly of the state of South Carolina regulating the issue of policies by fire insurance companies, approved Feb. 28, 1896."

To this bill the defendant interposes a demurrer, substantiated by a plea. There are six grounds of demurrers stated:

"(1) That it appears by the record that the court of common pleas for Charleston county adjudged as matter of law that the suits against the several complainants and defendants in that court were not removable, and retained jurisdiction thereof. In such case this court has no power to enjoin or restrain the further prosecution of the suits in the state court. (2) That it appears by the record that the court of common pleas aforesaid had acquired jurisdiction of the said several suits before this bill was filed. In such case this court has no jurisdiction or power to enjoin or restrain

the further prosecution of the said suits in said court of common pleas. (3) That as to so much of the bill as seeks to enjoin the defendant the Virginia-Carolina Chemical Company from prosecuting its suit against the London Assurance Corporation in the court of common pleas of Charleston county, that the amount in controversy in said suit, as appears by the record, is below $2,000, in which case this court cannot take jurisdiction of it, either in its original or removal jurisdiction. (4) That all of the suits removed into this court are actions at law, in each of which the plaintiff is entitled to a trial by jury, of which this court, sitting as a court of equity, cannot deprive it by consolidation of them all in an equitable proceeding. (5) That the bill is multifarious. (6) That complainants have a plain, adequate, and complete remedy at law, and that their bill is without equity." The plea sets up that the complainants are either aliens, or citizens of states other than South Carolina, and that defendant is a citizen of Virginia; and that this court cannot take jurisdiction thereof, as defendant objects thereto, and by this plea it does so object.

Smythe, Lee & Frost and King & Spalding, for complainant.
Mitchell & Smith, for defendants.

## As to the Plea.

SIMONTON, Circuit Judge (after stating the facts). The act of 1887–88 (25 Stat. 433) provides that no civil suit shall be brought before either of the circuit courts of the United States against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different states suit shall be brought only in the district of the residence of either the plaintiff or the defendant. The complainants are corporations of the state of New York, and the defendant, a corporation of the state of Virginia, can claim the right as against them to be sued only in the district of which it is an inhabitant, to wit, the state creating it. Railroad Co. v. Koontz, 104 U. S. 5, 26 L. Ed. 643. If, therefore, the present suit be brought in the original jurisdiction of the court, it cannot be entertained. But, if it be an ancillary proceeding, then the suit can be entertained, notwithstanding the citizenship and place of residence of the several parties. White v. Ewing, 159 U. S. 39, 15 Sup. Ct. 1018, 40 L. Ed. 67. Is this an ancillary suit? There are in this court, subject to its jurisdiction, and on its files for trial, certain cases at law brought by the Virginia-Carolina Chemical Company against many insurance companies, among them these complainants. The cases are several in their nature. This bill is filed by the complainants, alleging that by reason of the existence of certain equities which cannot be set up at law the prosecution of such suits will work manifest wrong and injustice to them; that these equities are common to all the suits; that by the very terms of the contracts they are interdependent, and are involved, the one in the other; and that no recovery can be had against any one defendant at law without reference to and comparison with the recovery against each of the other defendants. The question is not whether the proceeding is supplemental or ancillary or is independent and original in the sense of the rules of equity pleading, but whether it is supplemental and ancillary, or is to be considered entirely new and original, in the sense which the supreme court has

sanctioned, with reference to the line which divides the jurisdiction of the federal courts from that of the state courts. No one, for instance, says Miller, J., in Minnesota Ry. Co. v. St. Paul Ry. Co., 2 Wall. 633, 17 L. Ed. 886, would hesitate to say that according to the English chancery practice a bill to enjoin a judgment at law is an original bill in the chancery sense of the word. Yet this court has decided many times that, when a bill is filed in the circuit court to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law. In Freeman v. Howe, 24 How. 460, 16 L. Ed. 749, the principle is thus stated:

"A bill filed on the equity side of the court to restrain or regulate judgments or suits at law in the same court, and thereby prevent injustice or an inequitable advantage under mesne or final process, is not an original suit, but ancillary and dependent, supplementary merely to the original suit out of which it has arisen, and maintained without reference to the citizenship or residence of the parties."

This principle is practically applied in Dewey v. Coal Co., 123 U. S. 331, 8 Sup. Ct. 148, 31 L. Ed. 179. This gas coal company brought its action at law against Dewey & Co. in a state court of West Virginia upon a coal contract. The case was removed into the circuit court of the United States for the district of West Virginia upon the ground of diversity of citizenship, the plaintiffs being a corporation of the state of New York. Pending this suit the defendants at law filed a bill on the equity side of the court against the plaintiff in the action at law and another corporation, the West Fairmount & Marion Consolidated Gas Coal Company, to whom the first-named company had assigned its property, setting up certain equities, and praying relief, among other things, that the action at law be stayed. The defendants in equity filed a demurrer and plea to the bill, challenging the jurisdiction of the court, in that some of the complainants were citizens of the same state as the defendant the Consolidated Gas Coal Company. The objection was overruled by the court, saying:

"The suit in equity was an exercise of jurisdiction on the part of the court ancillary to that which it had already acquired in the action at law, which it might well entertain according to the rule adjudged in Krippendorf v. Hyde, 110. U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145, and Pacific Ry. Co. v. Missouri Pac. R. Co., 111 U. S. 505, 4 Sup. Ct. 583, 28 L. Ed. 498. The plea is overruled."

The demurrer, as has been seen, contains six distinct causes of demurrer. The sixth and last ground is for want of equity in the bill. This will be first considered. The bill charges that the property insured, by reason of fraudulent misrepresentation and concealment, was placed at a valuation exceeding its true value 100 per cent.; that the contracts of insurance were made with reference to the value of the property at risk, and the liability of each complainant was measured by the proportion which the amount of risk assumed by it bore to the actual loss, taking into consideration the whole amount of risks assumed. The first question which arises is, can the question of the valuation of the property at risk be now in-

quired into in view of the legislation of the state of South Carolina on this subject? Or, in other words, does not the legislation of South Carolina treat the valuation put upon the property by insurer and insured at the time of effecting the insurance as final and conclusive, and estop both parties from thereafter disputing it? The terms of the act (22 St. at Large, pp. 113, 114) are as follows:

"No company or individuals writing fire insurance policies doing business in this state shall issue policies for more than the value to be stated in the policy, amount of the value of the property to be insured, the amount of insurance to be fixed by the insurer and insured at or before the time of issuing said policies, and in case of total loss by fire the insured shall be entitled to recover the full amount of insurance and a proportionate amount in case of partial loss. Provided, two or more policies written upon the same property shall be deemed and held contributive insurance, and if the aggregate sum of all such insurance exceed the insurable value of the property as agreed by the insurer and the insured in the event of total or partial loss, each company shall be liable for its pro rata share of said insurance. No statement in the application for insurance shall be held to prevent a recovery before a jury on said policy in case of partial or total loss. Provided, after the expiration of sixty days the insurer shall be estopped to deny the truth of the statement in the application for insurance which was adopted, except for fraud in making the application for insurance." Approved February 28, 1896.

It is contended that this act does not comply with the provision of the constitution; that each act must express in its title the subject of the act. Discussion of this point is unnecessary. The bill charges that the sum fixed in this policy was so fixed through misrepresentations, fraud, and concealment. We are discussing a demurrer. Fraud vitiates all contracts. This act itself excludes from the estoppel under the contract statements adopted through fraud. The complainants are not estopped from proving, if they can, fraudulent misrepresentation and concealment, and to this extent correcting the policy as to the value of property insured; and it may be well said that if, in 16 separate suits, the question of valuation be left to as many juries, we may have in each case a different valuation, and that just proportion secured to each company of its share in the whole loss will be lost and destroyed. The clause in the policy bearing upon this point is as follows, provision having been made in another part of the policy that the insured shall maintain an insurance on the property equal to 90 per cent. of its cash value, each policy further providing:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from the premises endangered by the fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers covering such property."

In order, therefore, in each case to ascertain the amount to be paid by each insurer if liability exist, the policy must be reformed in so far as it states the value of the property insured; and then the proportion which the amount or sum each assumed bears to the entire insurance must be ascertained. If the statements of the bill in this regard are true,—and for the purposes of this demurrer we must take them as true,—then complainants have set up an equity

to maintain their bill, and they have no plain, adequate, and complete remedy at law.

As to the other grounds of demurrer: The cases at law brought originally in the state court have been removed into this court, and a motion to remand them has been refused. It is the law, therefore, of this case, that those removed cases are wholly within the jurisdiction of this court, and that the state court has lost jurisdiction of them. Kern v. Huidekoper, 103 U. S. 493, 26 L. Ed. 354. The causes and the parties being thus in this court, subject to its jurisdiction, the present complainants filed their bill setting forth certain reasons why they cannot obtain plain, adequate, and complete relief at law. The controversy being thus in this court, and it appearing by the facts stated in the bill that complete justice cannot be done to the parties to it without deciding upon these equities, it is competent for this court to call upon the defendant to answer these allegations of the bill, and in the meantime to desist from seeking relief at law, or in any other jurisdiction. It is not claimed that the circuit court of the United States has the right to enjoin further proceedings in an action in the state court simply because, in the opinion of the circuit court, the cause is removable, in which opinion the state court has not concurred. The state court is not bound to surrender its jurisdiction of a suit simply because a petition for removal has been filed. Stone v. South Carolina, 117 U. S. 432, 6 Sup. Ct. 799, 29 L. Ed. 962. The state court has the right to decide for itself whether, admitting all the facts stated in the petition for removal, the petitioner, as a matter of law, is entitled to the removal. Railway Co. v. Dunn, 122 U. S. 516, 7 Sup. Ct. 1262, 30 L. Ed. 1159. This being so, no injunction can issue from this court restraining the state court simply because, in the opinion of this court, the case was removable. But, although this is the law, still, if the state court refuse to remove the cause, the party seeking the removal may enter a copy of the record in the circuit court, and that court may, if it think proper, entertain jurisdiction, and pass on the merits of the case; the action of both courts being subject to review in the common tribunal, the supreme court of the United States. "The petitioning party has the right to remain in the state court under protest,   *   *   *   or he may enter the record in the circuit court, and require the adverse party to litigate with him there, even while the state court is going on. Railroad Co. v. Koontz, 104 U. S. 15, 26 L. Ed. 643. In other words, these courts, co-ordinate in jurisdiction, and wholly independent of each other, cannot restrain each other simply because they differ upon the legal questions as to the removability of a cause. This court can go on, entertain jurisdiction of these cases at law, and enter full judgment thereon, notwithstanding that the judge of the state court thinks they are not removable. But this is not the question raised in this bill. Assuming that the law cases are within the jurisdiction of this court, the complainants in the present proceedings set up certain equities from which it appears that full justice cannot be had by trials at law, and that the interposition of a court of equity is needed. To this end they pray that the Virginia-Carolina Chemical Company be restrained from prosecuting these actions at

law now in this court until these equities are considered and passed upon. It is an unquestionable exercise of the jurisdiction of the court over cases under its control. Surely, the fact that the cases have been removed from the state court notwithstanding the opinion of that court cannot deprive this court of the right to exercise this jurisdiction. It can, without doubt, go on, and try the cases, render judgment. If so, it can make use of all the methods courts employ to secure equal and exact justice in cases before them. But it is objected that the prayer of the bill goes further than this. It seeks also to enjoin the Virginia-Carolina Chemical Company from prosecuting its suit against the London Assurance Corporation, now in the state court, and admitted to be outside of the jurisdiction of this court; and also to enjoin the same company from prosecuting the removed cases in the state court. Now, the scope and purpose of this bill is not to enjoin suits in the state court because they are removable and have been removed into this court against the opinion of the state court. It is not an original bill filed with this intent. It is an ancillary bill seeking to enforce equities binding on the conscience of the Virginia-Carolina Chemical Company, which cannot be set up in the law cases, but which must be considered in order that justice be done. It is a bill filed to regulate suits at law in this court, and thereby prevent injustice, or an inequitable advantage under mesne process, not an original suit, but ancillary and dependent." Freeman v. Howe, supra. It is, as has been said, a suit to enforce equities binding on the conscience of the Virginia-Carolina Chemical Company, rendering it improper for them in this court or elsewhere to enforce their strict legal rights under these contracts. These equities grow out of the contracts, which it is charged are interdependent with each other, not enforceable without reference to each other, rendering it necessary that the court should first pass upon equities common to them all before the liability of any one of them can be ascertained. Inasmuch as the London Assurance Corporation has the same common interest in these equities as the corporations in this court, and as full justice cannot be done without deciding these equities for it as well as the others, the Virginia-Carolina Chemical Company is required to refrain from prosecuting its strict legal remedies against it as well as the others, and this can be done in the exercise of the ancillary jurisdiction, which is not dependent on citizenship or amount in controversy. This case bears no resemblance to Haines v. Carpenter, 91 U. S. 256, 23 L. Ed. 345, in which it was sought by original bill in the federal court to stop litigation in the state court. Nor is it within U. S. v. Parkhurst-Davis Mercantile Co., 176 U. S. 319, 20 Sup. Ct. 423, 44 L. Ed. 485, a case in all respects similar to Haines v. Carpenter. In neither case was a federal question involved, and in both cases were attempts made to rob the state court of jurisdiction. In the present case it is alleged that the court cannot do full justice unless the London Assurance Corporation is made a party to the suit. "The injunction sought is in no sense a prohibition to the court of law in the exercise of its jurisdiction. It is not addressed to that court. It does not even affect to interfere with it. The process, when its object is to restrain

proceedings at law, is directed only to the parties. It neither assumes superiority over the court in which these proceedings are had, nor denies its jurisdiction. It is granted on the sole ground that from certain equitable circumstances, of which the court of equity granting the process has cognizance, it is against conscience that the party inhibited should proceed in the cause. The object, therefore, really is to prevent an unfair use being made of the process of a court of law in order to deprive another party of his just rights, or to subject him to some unjust vexation or injury, which is wholly irremidiable in a court of law." Story, Eq. Jur. § 875. Compare Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538; Marshall v. Holmes, 141 U. S. 594, 12 Sup. Ct. 62, 35 L. Ed. 870. Assuming, for the purposes of the case before us, that the allegations of the bill are true, it would appear that this court, taking jurisdiction of the controversy, and looking to the distribution of the loss, can compel the defendant to bring the case of the London Assurance Corporation into this court.

There remains the fourth ground of demurrer,—that the original actions were actions at law, in which the present defendant, plaintiff in those actions, was entitled under the constitution to trial by jury; that this court has no jurisdiction, as a court of equity, by consolidation of said actions in one equitable proceeding, to deprive the defendant of its right of trial at law before a jury. The gravamen of this bill is that in the actions at law complete justice cannot be done; that there exist certain equities which must be disposed of before this end can be reached; that these equities are common to all the complainants; that by the terms of the contract, which is the same with each of them, each complainant is vitally interested in the recovery which may be obtained against every other of them. These are that by the terms of this contract 90 per cent. of the value of the property should be insured; that each insurance company should bear its proportion of the loss; that this loss, having been ascertained, should be ratably proportioned among them, so that no one should bear more than its proper proportion; that the first essential fact to be ascertained is the amount of this loss; that by reason of false and fraudulent misrepresentations and of fraudulent concealment the value of the property has been grossly overstated in the policies; that this loss for this reason must be established by judicial proceedings, and that it cannot be established in 16 separate suits at law without danger of—almost with the certainty of—injustice; that for this reason, and to avoid a multiplicity of suits, recourse must be had to the aid of a court of equity. If these facts be true (and for the purposes of the demurrer they are assumed to be true), we have the resort to the court of equity,—a substantial thing. This being so, the seventh amendment to the constitution does not apply. This amendment does not in any way affect the procedure of the court of equity. Shields v. Thomas, 18 How. 262, 15 L. Ed. 368; Barton v. Barbour, 104 U. S. 126, 26 L. Ed. 672.

It is said that the bill is multifarious. But each of the complainants has a standing in court. Their causes of action are not antagonistic. The relief which they pray involves in each case the same

questions, requires the same evidence, and leads to the same decree for all. Walker v. Powers, 104 U. S. 245, 26 L. Ed. 729. The demurrer, as well as the plea, is overruled. The defendants have leave to answer over.