Summers, J.
In the Court of Common Pleas of Lucas county this was an action by Peter Anderson against several defendants to recover the possession of several city lots, or parcels of real estate in the city of Toledo.
The title of Peter Anderson to the lands in question depends upon the construction to be given to his grandfather, Henry Anderson’s will. Plenry Anderson, the grandfather, made his will on February 28, 1846, and died on the third day of April following. He left two children only, William born February 12, 1828, and James H. born June 25, 1831. William died in 1850 intestate, unmarried and without issue. James H. the other son, died in 1902, intestate and left surviving him as his only child, and only heir at law, the plain.tiff, Peter Anderson, who was born August 27, 1859, and he is the grandson and the only grandchild, and only living descendant of the said Henry Anderson.
The testator gave all of his property, both real and personal, to certain persons in trust, and the will then reads as follows:
“Item. It is my will that when my son William arrives at' the age of twenty-one years the trustees of the first and general trust shall deliver to him a settlement of the affairs of the trust, and if my debts are then paid, and as soon as that takes place, they shall put him in possession of one-half *39 of my property, reserving thereout two-fifths parts of said moiety by valuation, which my said trustees shall hold in trust and properly invest and pay over to him at the age of twenty-five years. If my interest in the American Land Company be not brought into the general trust at the time William becomes twenty-one, but is brought in at any time before he arrives at twenty-five, so soon as brought in, two-fifths shall be deducted therefrom and invested and paid over to him at twenty-five, the other three-fifths he shall have, as soon as paid in. I find the above does not express my will in this: When I say two-fifths shall be deducted from the interest I may have in the land company for investment, and three-fifths to be paid to him, I mean two-fifths of a moiety shall be deducted and three-fifths of a moiety paid over.
“And it is my will that my said trustees hold and invest and pay over the remaining moiety of my estate to my son James at the respective periods of twenty-one and twenty-five years of age, being governed as to the amounts to be paid at each of the respective periods by the same rules and directions as are above laid down in the bequest to William, and to be governed in all other respects by the regulations laid down concerning the same.
“If either of my sons die without lineal descendants, the one surviving shall take his estate above bequeathed, and, if the survivor dies without lineal descendants, then one-half both of the decedent’s original portion, as well as one-half of the portion taken by survivorship, shall go to my brother Peter, *40 the other half to such of my brothers and sisters as may be living at the time of the death of such surviving son. If my brother Peter be not living at the time, of the death of my surviving son, so dying without lineal descendants, then the share he would have taken, if living, shall go to his children living at the time of the decease of my said son, and if there be no children surviving, then the share shall go to my other brother and sisters surviving at the time of such decease of my son. I make the following explanation: The limitation over on the death of my surviving son without lineal descendants is intended to take effect if there be no lineal descendants living at the time of the decease of such son. Nothing in the foregoing will shall be construed as to deprive either of my sons disposiftg of their portions by will on their attaining the age of twenty-one years, respectively. The above limitations over shall give way to the provisions of such wills.”
This will was duly probated in Mississippi, and an authenticated copy of the will and of the probate thereof were thereafter duly filed in the Probate Court of Lucas County, Ohio, where the will was duly admitted to probate and record as a will from another state.
On April 7, 1860, James H. Anderson, the father of the plaintiff, and the then surviving son of the testator, executed and delivered to one Charles Butler a quitclaim deed of all the real estate involved in this action, which deed was duly signed, sealed, acknowledged and executed by him in the presence of two witnesses who *41 signed the deed as such, and which deed was duly recorded in the Recorder’s Office of Lucas County, Ohio, on May 3, 1860.
The defendants derive their title from Charles Butler. In 1838 the land in controversy was owned in fee simple by one Edward Bissell, who then mortgaged it to Charles Butler to secure the payment of his bond for a large sum due in one year. In 1841 Butler assigned the bond and mortgage to Henry Anderson as collateral security for the payment of his note to Anderson, and, in default of payment, Anderson in 1843 filed his bill in chancery in the Court of Common Pleas of Lucas County, Ohio, to foreclose the Bissell mortgage. The land was hid in by Anderson at the master’s sale in 1844 and he received the deed therefor. Pie then entered into an agreement with Butler which in effect, so it is contended, made the land the property of Butler and vested the title in Anderson merely as security for the payment of Butler’s note to Anderson. Butler thereafter obtained quitclaim deeds from Bissell and from Anderson’s trustees and from William and James PI. Anderson, and it is also contended that the proof shows that the payments made by Butler to Henry Anderson and to his trustees discharged the note, but it is not necessary to narrate the facts in detail, for if the title was in James H. Anderson his quitclaim deed conveyed it to Butler, and it did not descend from James PL Anderson to his son, the plaintiff, and these facts become material only in the event the plaintiff took an estate in the land under his grandfather’s will. The facts are set nut in *42 detail in the opinion of the circuit court, 9 C. C, N. S., 473.
The petition in this case was filed August 17, 1905. The defendants were not tenants in common, but each held a lot in severalty. Some of the defendants by answer objected to the petition on the ground that separate causes of action against several defendants were improperly joined, and on August 25, 1905, one - of the defendants, a corporation, filed its petition and bond for removal into the next circuit court of’ the United States to be held in the northern district of Ohio, western division. The petition for removal averred that the corporation was the owner and in exclusive possession of one of the lots, that it had no interest in any of the other lots and that none of the other defendants had any interest in • its lot, that the corporation was a citizen of Michigan, that plaintiff was a citizen of Tennessee, and that the controversy in said suit between the corporation and the plaintiff was a separable controversy, wholly between it and the plaintiff, relating to the ownership and right to possession of the real estate described as lot 332 in Port Lawrence Division, Toledo, Ohio, and the rents and profits to the same, and that the value of the real estate in controversy, exclusive of interest and costs, exceeded the sum of two thousand dollars. The transcript does not show any action by the court upon the petition for removal or upon the bond, but it does appear that on the sixth of November, 1905, the plaintiff dismissed his action, without prejudice, as to that defendant, and that in consideration thereof such defendant withdrew *43 its petition for removal, and on the same date there is this docket entry, “Petition for removal withdrawn.” The action was dismissed also as to some other defendants. Thereafter, on January 2, 1906, the plaintiff and the remaining defendants entered into a stipulation that the defendants waived the misjoinder of causes of action in the plaintiffs petition and that all the parties consented and agreed to try together all of the causes of action set forth in the petition. Thereafter the action was tried in the court of common pleas and a verdict was directed for the defendants and each of them and the petition was dismissed. On July 14, 1906, the plaintiff filed a petition in error in the circuit court and assigned as his first ground of error, that the common pleas court lost jurisdiction of the action with the filing of the petition and bond for removal. Other errors are assigned. The circuit court affirmed the judgment of the court of common pleas and the case is brought here on error to reverse the judgments of the lower courts.
Upon the filing' of such petition and bond the federal statute makes it the duty of the state court to accept them and to proceed no further in the suit. Thereupon the state court is divested of jurisdiction of the suit and its subsequent orders are coram non judiee, unless its jurisdiction be restored. Railroad Company v. Koontz, 104 U. S., 5; Steamship Company v. Tugman, 106 U. S., 118; Madisonville Traction Company v. St. Bernard Mining Company, 196 U. S., 239. In this case we think the jurisdiction was restored as to the remaining defendants, by the withdrawal of *44 the petition for removal by the defendant that filed it and the dismissal by the plaintiff of his action against that defendant, before any action upon the petition and bond had been taken in either court. The state court had jurisdiction of the subject matter and of the parties, but under the Federal Constitution and laws it was the privilege of one of the defendants to have the suit transferred to a federal court, and when he filed the requisite petition and bond the jurisdiction of the state court was suspended. The federal court could with the consent of the parties restore the jurisdiction by remanding the suit, and we see no good reason why the jurisdiction of the state court may not be restored by the withdrawal of the petition for removal before any action upon it has been taken.
In the federal court, to which the case was sought to be removed, on the ground of an alleged separate cause of action against one of the defendants, it would be, as a matter of course, remanded to the state court upon the entry of a discontinuance as to him (Texas Transportation Co. v. Seeligson, Admr., 122 U. S., 519), or upon a settlement of the controversy between him and the plaintiff. Torrence v. Shedd, 144 U. S., 527.
There was merely an irregularity in the mode of restoring the jurisdiction, of which the plaintiff will not be heard to complain. In Garrozi v. Dastas, 204 U. S., 64-72, Mr. Justice White says: “The assertion of the Want of jurisdiction in the court below rests, however, not upon a denial of power in that court to have entertained the controversy if the ,suit had been originally brought there, but upon the contention that, as a *45 defendant other than the husband was a resident and citizen of Porto Rico, the cause was improperly removed from the local court. And the proposition goes to the extent of insisting that such want of jurisdiction may be asserted by the person who procured the removal, who resisted the effort to remand, and when the want of jurisdiction is only suggested after trial and final decree.” And the conclusion was that even though the removal was irregular, the party who caused the removal could not be heard, after judgment against him, to assert that the United States court was wanting in jurisdiction solely on the ground that the case was erroneously removed. And if' the conclusion in Baltimore & Ohio Rd. Co. v. Fulton, Admr., 59 Ohio St., 575, that where a suit is removed to the federal court and then dismissed without trial, no subsequent suit upon the same cause of action can properly be brought in the state court, is not correct, as seems to be the opinion in Gassman v. Jarvis, 100 Fed. Rep., 146 (and see note to Young v. Southern Bell Teleph. & Teleg. Company, 7 L. R. A., N. S., 501, where the cases are collected; 75 S. Car., 326), then, in effect, the withdrawal of the petition and bond for removal and the trial of the suit in the state court by agreement of all the parties was the prosecution of a new suit upon the same cause of action.
The remaining question, what estate did the plaintiff take under the will, would not, perhaps, have consumed much time, for the leading textbooks and the cases are in accord that he took none, had not the circuit court of appeals reached *46 a different conclusion in Anderson v. Messinger, 146 Fed. Rep., 929, where the same will was construed. It is there held that James H. Anderson, the surviving son, took a life-estate, with the remainder to his son, Peter Anderson, the plaintiff. In Underhill on the Law on Wills, Section 468, it is said: “Where real or personal property is given to" a person absolutely, but if he should die without leaving children then over, the primary devisee takes a common-law fee conditional, which is defeasible on his death without leaving children, though the children, if he leave any, take no estate as purchasers under the will by implication. If the first taker shall die leaving children him surviving, by which event the remainder is defeated, they will take by descent from their parent and not as purchasers under the will. Lie has an estate in fee with full power of disposal, and the only effect of mentioning the' children in the will is to indicate the contingency upon which his estate in fee is to be defeated.”
At-common law it was settled, says Mr. Jarman (Jarman on Wills, *521, 6th Edition), that a devise to a person indefinitely, with a limitation over in case he died without issue, or words of similar import, conferred an estate tail on such person, and on the ulterior devisee a remainder in fee expectant on the' estate tail in such prior devisee, on the ground that, by postponing the ulterior devise until the failure of the issue of the prior devisee, the testator afforded an irresistible inference that he intended that the estate to be taken by the prior devisee under the indefinite devise should be of such a measure and duration as *47 to fill up the chasm in the disposition, and prevent the failure’ of the ulterior devise, which, as an ex-ecutory devise to take effect on the general failure of issue, would be void for remoteness.
And in like case, where there was an express estate for life in the first taker, he was held to take an estate tail. In Stanley v. Lennar d, 1 Eden’s Chancery Reports, 87-95, the Lord Keeper said: “Where a man, by his will, makes one tenant for life, with remainder to one, two, three, four, five, etc., of the iss.ue of the tenant for life, and then, for want of issue of tenant for life, limits the estate over, this will be an estate tail in the first taker for life by necessary implication; and this, because of the word ‘then’ before the limitation over, which, though sometimes an adverb of time, yet is sometimes a word of relation, and signifies as much as ‘in such case,’ and must have this effect, that upon the first, second, third, fourth, fifth, etc., limitations failing, the remainder-man could not take it, because of the words, for want of issue; and therefore, unless the tenant for life was construed to have an estate tail, it would descend, in the meantime, to the heir at law, because the contingency on which the remainder-man was to take had not happened. But as- the testator certainly intended to dispose of his whole estate, it has been construed a necessary implication, that the tenant for life should take an estate tail to carry the testator’s intent into execution. But where there is an express estate for life, the court never enlarges this estate for the sake of the tenant for life himself, but merely for the sake of other persons who are intended to take by the will. *48 To this it is objected that you will introduce an estate tail, which . will give the party an opportunity of defeating the limitations over; but this proves too much; for so it happened in all the cases that have been cited at the bar; for you cannot supply the- defect and omission in the will without giving the tenant for life power to destroy the remainders over.”
This result follows from interpreting the words “die without issue” or words of similar import to mean an indefinite failure of issue. But in 1837 an act was passed (1 Viet., c. 26, s. 28, 29), by which it was provided that a devise of real estate without any words of limitation shall be construed to pass the fee simple, or other the whole estate and interest which the testator had power to dispose of by the will, and “that in any devise or bequest of real or personal estate the words ‘die without issue/ or ‘die without living issue/ or ‘have no issue/ or any other words which may import either a want or failure of issue of any person in his lifetime or at the time of his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the lifetime or at the time of the death of such person, and not an indefinite failure of his issue, unless a contrary intention shall appear by the will.” And so Mr. Jarman says (*525), “Under this clause, coupled with the preceding section, which makes a devise confer an estate in fee without words of inheritance, it will generally happen, in cases in which, according to the old law, the prior devisee would have been tenant in tail, by the effect of words devising over the property on the *49 failure of his issue, that he will, under the new rule of construction, take an estate in fee simple, subject to an executory devise in the event of his dying without leaving issue at his death.” And then speaking of the advantages attending the present mode of construction, he says (*523), “Secondly, that by excluding an implication of an estate tail in the person whose issue is so referred to, where he takes an estate under the will, or Avhere he or the express devisee happens to be the heir at larv of the testator, the new construction has the effect of exempting the interest of the ulterior devisee from its liability to be defeated or destroyed by the act of the prior deAÚsee; the result being, that instead of the ulterior devisee having (as formerly) a remainder in fee expectant on an estate tail in such prior devisee (which, of course, the latter might have barred by a disentailing assurance), he takes by executory devise engrafted on a preceding fee simple, to arise on the event of the first devisee dying without leaving issue at his death, the estate of such prior devisee being absolute in the alternative event.”
Now, the pertinency of this statement that, in such a case under the new rule of construction, the prior devisee takes an estate in fee simple, subject to an executory devise in the event of his dying without leaving issue at his death, is apparent when it is stated that in this state the common law rule never was adopted, but was rejected and the modern rule was adopted. Parish’s Heirs v. Ferris et al., 6 Ohio St., 563; Niles et al. v. Gray et al., 12 Ohio St., 320.
*50 Where there is a devise to A. for life and in case he should die without issue to B., it has been urged in case A. dies leaving issue, the issue take by implication on the ground that it would be absurd in the testator to make the estate of the ulterior devisee depend on the contingency of there not being issue, and yet, in the alternative event to give the property neither to A. himself nor to such issue, but to leave it to devolve to the heir at law or residuary devisee. Mr. Jarman says (*522), “There is, however, no authority for implying an estate in the issue living at the death, and the contrary conclusion is supported by Monypenny v. Dering, where it is argued that a devise over in default of issue of A., a tenant for life, to some only of whose issue an estate was expressly given, showed that the intention must have been that not some only but all the issue should take; but Sir J. Wigram, V. C, 'said, that, admitting such to be the intention, it furnished no sufficient ground for supplying estates by purchase to the omitted issue. He had asked for but did not get any authority for such a proposition.” It may be added that there is no such absurdity, for in cases of bequests for life, with gift over in default of children, it is held that the children do not take by implication.
In Jarman on Wills (*524), it is said: “As no implied estate to the issue arises (as we have seen) from a limitation over in case of the prior devisee or legatee dying without leaving issue at his decease, it should seem that there is the same absence of authorized ground for implying a gift *51 to children from a similar limitation over in default of these objects.
“Accordingly, in several cases it has been considered that a bequest to a person, and if he shall die without having children, or without leaving children (whi@h means without having had a child born, or without leaving a child living at his decease), then over, does not raise an implied gift in the children; but the parent takes an absolute interest, defeasible on his dying without having had, or without leaving, a child as the case may be. The rejection of the implication in such a case is not (as already pointed out) productive of any absurdity; for it supposes the testator, by making the interest of the legatee indefeasible on his having or leaving a child, to intend that if there are children he shall have the means of'providing for them.
“And even where the language of the will necessarily confines the interest of the parent to his life, the children will not generally be held to take by implication; it is extremely probable that the testator intended- a benefit to them; but si voluit non dixit."
Before the making of this will an act was passed (March 3, 1834, 1 Curwen, 145, now Section 5970, Revised Statutes), which declared that in any will thereafter made, a devise of lands shall be construed to be a fee simple; “and the devisee shall take, all the estate which the deviser had in the property or thing divested, unless it appears by express words the manifest intent that a lesser estate was intended.” And before the passage of this act it had been decided by this court that *52 words of inheritance are not necessary in a will to pass an estate in fee simple. So that Henry Anderson, by the direction in his will to his trustees to put his son William, when he arrived at the age of twenty-one years, in possession of one-half of his property, excepting two-fifths part of said moiety, which they shall pay over to him at the age of twenty-five years, and b}r a similar direction as to his son James, vested in them a fee simple title of all the estate he had* in real property, unless it appears by express words or manifest intent that a les'ser estate was intended. There are no express words, unless the son died without lineal descendants living at the time of his decease, which was not the event at the decease of the surviving son James. But it is contended that by making the limitation over contingent upon the death of the son without lineal descendants, living at the time of his decease, the testator manifested an intention that the son, in the event he died with lineal descendants living at the time of his decease, should take only an estate for life and that the lineal descendants should take a remainder. The answer to this is that it is settled, as already shown, that the limitation over in the event of non-existence of lineal descendants does not of itself imply a devise to the lineal descendants. The alternative of the devise over is an indefeasible estate in the son. To say that the testator must have intended the grandchildren to take is merely conjecture. The testator may have supposed that the son’s children would inherit the son’s property, or that the son would give it to them; this is the most that can be implied from *53 his mention of them, and if he acted upon that belief and, after the devise of his property to the sons, attempted .to provide only for the contingency of their death without surviving lineal descendants, then not only can it not be said that he intended to devise it to grandchildren, but a reason for his not doing so is apparent.
In this will not only is there nothing from which to imply an estate in grandchildren but such an implication is precluded by the explanations of the testator. He says: “Nothing in the foregoing will shall be construed as to deprive either of my sons disposing of their portions by will on their attaining the age of twenty-one years, respectively. The above limitations over shall give way to the provision of such wills.”
This is not the gift to the sons of a power to dispose of the estate by will. In the contemplation of the testator that power they already had upon attaining the age of twenty-one years for he says they are not to be deprived, of it. If it be said that this explanation merely qualifies the limitation over, then it does not help the plaintiff, and if taken literally, then the sons upon attaining the age of twenty-one years could dispose of their estates by will even though they had children, which is inconsistent with an intention of the testator to make the grandchildren objects of his bounty. The evident intention of the testator was to give his sons absolute estates to be divested only in case they died without issue living at the time of their decease and without having disposed of the estate by will.
*54 In Dowling v. Dowling, L. R., 1 Ch. App., 615, the testator directed that the interest from his residuary estate should be divided half yearly between his four sons, “and at the decease of either without lawful issue such share to revert to the remainder then living, or their child or children.” Stuart, V. C, held that the sons took only a life estate, and that the children took a remainder by implication, but on appeal (Dowling v. Dowling, 1 Ch. App. Ca., 612), his decree was overruled and it was held, “That each of the four sons took an absolute interest in his share subject to be divested in case of his dying without leaving issue : and that there was no gift by implication to the children of any who might die leaving issue.” In the opinion, Turner, L. J., says (615)', “There is, therefore, in my opinion, an absolute gift to the sons; but this absolute gift is subject to this condition, that upon the death of either of them without issue, the share is to revert to the remainder then living or their child or children. It appears to me, upon the construction of the whole will, that the children were not to take any interest as against their parents. If the parents are out of the w^ay, then the children are to take in their place; but so long as there are parents the children are to take nothing-. The testator thought that in that case he had done enough for them, for the parents might provide for their own children.”
In re Rawlins’ Trusts, L. R., 45 Ch. Div., 299, it is held, “Where, in a will, there is a gift to A. for life, with a gift over ‘on the death of A. without leaving children,’ those words are not, by *55 themselves, without assistance from other parts of the will, sufficient to create a gift by implicatibn to the children.”
This case went on appeal to the House of Lords where it was affirmed, under the name of Scale v. Rawlins, (1892) A. C., 342. There it was contended that the construction below led to an absurdity, and that either the niece took an absolute interest in feé simple in the houses, subject to defeasance if she left no children, or there was an implied gift to the children. Lord Halsbury, L. C, says: “It is manifest that taking either alternative proposition put forward by the appellants, this House, if it is called upon to give that effect to the instrument, must put words into the will in order to do it. The thing has not been done; and I am not aware of any authority which would lead your Lordships to come to the conclusion that, because the testator had at some time or other the intention in his mind to give this property to the person in question, you are justified in saying that he has done so by the instrument which he has executed.”
Again he says: “Then it is said that he intended to make a gift to the children. Again I say that he does not do so. I cannot say that he had not the intention, but all I can say is that he has not expressed it, and your Lordships cannot put in words simply because you may have some suspicion that in making his testamentary disposition that was the intention in his mind.”
In Doe, ex dem. Barnfield et al. v. Wetton, 2 Bosanquet & Puller, 324, there was a devise to S. S., her heirs and assigns forever; but if she shall *56 happen to die leaving no child or children lawful issue of her body living at the time of her death, then to F. B. and his heirs, and it was held that the devise - in fee to S. S. was not restrained by the subsequent words to an estate tail, and that the devise over to F. B. was a good executory devise. In the opinion, Lord Eldon, Ch. J., says: “It has been argued in this case, that it was manifestly the testator’s intention, that the children and grandchildren of S. Saunders should be benefited. But however that may be, the question is, Whether the testator intended, that the children and grandchildren should be benefited by this will, or by some disposition to be made by S. Saunders, if she had any children living at the time of her death, the estate being given to her in fee, she would have abundant power to provide both for children and grand-children. Nothing, however, is given to them by this will; they are merely named in the description of the contingency on which the estate is to go over.”
In Den v. Snitcher, 14 N. J. L., 2 Green, 53, where there was a devise to a son and if he should die without issue, then at his decease, over, Hornblower, C. J., says (59) : “It appears to me hardly possible that any intelligent mind, unembarrassed by technical rules and legal refinement, can entertain a doubt upon the plain reading of this will, that the testator intended his son Samuel should have the whole of the plantation in fee simple, in case he had issue, and that at all events, he should be the absolute and unconditional owner of one-half of it. Fie did no1- intend to give the estate to Samuel’s issue: but he intended to give it to Samuel, if he had issue.”
*57 Again he says (60), referring to the statute of that state providing that a devise without the word “heirs” shall convey an estate in fee simple: “Let us then enquire, First, Did Joseph Copner devise to his son Samuel, any lands, etc., without using the words ‘heirs and assigns?’ He certainly did; and if he had stopped there, the whole plantation, under the influence of the act of Assembly, would have passed, in fee simple, to Samuel, the devisee.
“Secondly. Has the testator used any expressions to shew that he intended to give Samuel ‘only an estate for life,’ in all the lands devised to him? Or, to change the form of the interrogatory, has the testator used any expressions to shew, that he did not intend, that Samuel should have a fee simple, in any part of the lands devised to him? I consider these questions of exactly the same import, for, since the act has declared that a devise to A., without words of perpetuity or inheritance, is a devise in fee. simple, we must presume the testator used the words understandingly, and so intended to give the land in fee simple, unless he has used some expressions inconsistent with such intention, or qualifying the general gift, and shewing that he did not mean to give the devisee either the whole, or any part of the land in fee simple.”
In Kinsella v. Caffrey, 11 Irish Ch. Rep., 154, the master of the rolls after reviewing a number of cases says: “I apprehend, therefore, that the authorities may be classed under three heads: First, where there is an indefinite bequest to the parent, and, if he die without having or leaving children, to B. In that case, it is clear that the children do not take any interest by implication. *58 Secondly, if there is a bequest to the parent for life, and, if he die without having or leaving children, to B.; if the parent dies leaving children,, they are not entitled by implication.' Thirdly, if however, in a case such as I have last mentioned, there are matters on the face of the will to raise an inference in favour of the children, the Court is at liberty to consider these circumstances in connection with the bequest over, in the event of the parent dying without having or leaving children, although such bequest over, by itself, is not sufficient to justify the Court inferring a gift in favour of the children.” These rules of construction are expressly approved In re Rawlins’ Trusts, supra.
The case of Shazv and Campbell v. Hoard et al., 18 Ohio St., 227, supports the contention of plaintiff, but it is contrary to the current of authorities and appears to have been disposed of without reference to any decisions and upon the conjecture that the testator supposed the property would descend to the children of the wife and daughter, and that this was sufficient to give it to them by implication. The case was decided in 1868, long after the making of the Anderson will, and so cannot be insisted upon as controlling the decision in this case. It is in conflict with other well considered decisions of this court. In Niles et al. v. Gray et al., 12 Ohio St., 320, where the testator gave real estate to his daughter, and provided that if she died without any legitimate heir, her part of the real estate should go to his eldest son, and the daughter had children and conveyed away the land, it was held, in a suit to quiet title by the grantees against the children, and in which the *59 children claimed that the mother took only a life estate and they took a fee simple, that the mother took an estate in fee simple subject to be determined by the contingency of her dying without issue living at the time of her death, on the happening of which, the estate would pass over to the eldest son by way of executory devise. This case is followed and approved in cases decided subsequently to Shaw and Campbell v. Hoard. The judgment is affirmed.

Judgment affirmed.

Price, C. J., Shauck and Spear, JJ., concur.